United States District Court
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Plumbers & Pipefitters Local 572 Pension fund et al., <br><br> Plaintiff, <br> v. <br> Cisco Systems, Inc. et al , <br><br> Defendant.                / | NO. 5:01-cv-20418 JW <br> **ORDER GRANTING CISCO INVESTORS GROUP'S MOTION TO CONSOLIDATE AND APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; DENYING FERMAGLICH'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO APPROVE LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL** <br><br> [Docket Nos. 38, 44, 59, 65 & 75] |

## I. INTRODUCTION

Before the Court are two motions to consolidate, appoint lead plaintiff, and approve selection of lead counsel with respect to seventeen related securities class actions filed against Cisco Systems, Inc. ("Cisco") and several of its officers and directors (collectively "Cisco Defendants"). Principally at issue before the Court are two competing motions by Plaintiff Cisco Investors Group and Plaintiff Warren Fermaglich ("Fermaglich") for appointment as lead plaintiff in this litigation. Both the (1) Cisco Investors Group, represented by Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") and Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A. ("Levin, Papantonio"), and (2) Fermaglich, represented by Stull, Stull & Brody ("Stull, Stull") and Weiss and Yourman, have filed motions with the Court to be appointed lead plaintiff and have their choice of lead counsel for the class approved by the Court. The Court finds it appropriate to take the motions under submission

for decision based on the papers filed by the parties pursuant to Civil Local Rule 7-1(b). Based upon all papers filed to date, the Court grants the motion to consolidate all actions except <u>Batallas v. Chambers et al.</u> (C-01-20828 JW). Furthermore, the Cisco Investors Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Choice of Lead Counsel is GRANTED. Fermaglich's Motion for Appointment as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Counsel is DENIED.

## II. BACKGROUND

Cisco develops and markets networking products for the internet. Seventeen related securities class actions have been filed by Cisco shareholders (collectively "Plaintiffs"), alleging violations of §10(b) and §20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Plaintiffs contend that the Cisco Defendants artifically inflated the price of Cisco stock by issuing a series of false and misleading statements about the business and financial health of the company. After trading at a high of $82 per share during the relevant class period, Cisco's stock price dropped to $31- 1/16 per share on February 7, 2001, after Cisco announced its results for the second quarter. Cisco's share price fell further in April 2001, after Cisco announced a $2.5 billion write-down of inventory components in its service business. According to the Cisco Investors Group, Cisco stock lost 84% of its value since its aforementioned class high of $82 per share, and effectively eliminated $400 billion in market capitalization as a result of the Cisco Defendants' allegedly fraudulent and misleading conduct.

Presently before the Court are two competing motions for consolidation, appointment of lead plaintiff and approval of lead plaintiff's choice of lead counsel.

## III. DISCUSSION

A.   <u>Consolidation</u>

There is substantial agreement between the Parties that consolidation is appropriate with respect to seventeen of the related securities class actions filed against the Cisco Defendants. Rule 42(a) grants the court discretion to consolidate "actions involving a common question of law or fact." Similarly, the PSLRA mandates that the court should order consolidation where the various securities actions assert substantially the same claim. 15 U.S.C. §78u-4(a)(3)(B)(ii). Consolidation is generally

2

ordered so long as any confusion or prejudice to a party does not outweigh the court's concern for efficiency. Wenderhold, 188 F.R.D. at 583 (quoting Primavera Familienstuftung v. Askin, 173 F.R.D. 115, 129 (S.D.N.Y. 1997)). In assessing whether to consolidate, courts should "balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result." Takeda v. Turbodyne Technologies, Inc., 67 F.Supp.2d 1129, 1133 (N.D.Cal. 1999).

Having reviewed the claims filed by the various Parties, the Court concludes that all of the claims in the aforementioned suits are based upon the same questions of law as well as arise out of the same factual allegations. All plaintiffs allege essentially the same class period. Plaintiffs also have raised their claims against the same defendants. Therefore, pursuant to Rule 42, the Court finds that the actions listed below should be consolidated:

1. Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc., et al., C-01-20418-JW
2. Walanka v. Cisco Systems, Inc., et al., C-01-1587-MEJ
3. Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Cisco Systems, Inc., et al., C-01-20375-JW
4. Lloyd v. Cisco Systems, Inc., et al., C-01-1613-EDL
5. Rubin v. Cisco Systems, Inc., et al., C-01-1608 -MEJ
6. Caresio v. Cisco Systems, Inc., et al., C-01-1623 -MEJ
7. Deitel v. Cisco Systems, Inc., et al., C-01-1629 -MEJ
8. Schneier v. Cisco Systems, Inc., et al., C-01-1641 -EDL
9. Kofsky v. Cisco Systems, Inc., et al., C-01-1683 -EDL
10. Hsu v. Cisco Systems, Inc., et al., C-01-1699 -JL
11. Orlando v. Cisco Systems, Inc., et al., C-01-1719 -MEJ
12. Maurer v. Cisco Systems, Inc., et al., C-01-1743 -WDB
13. Campanella v. Cisco Systems, Inc., et al., C-01-1946 -JCS
14. Mayer v. Cisco Systems, Inc., et al., C-01-2006 -MEJ
15. Norell v. Cisco Systems, Inc., et al., C-01-2165 -WDB
16. Taylor v. Cisco Systems, Inc., et al., C-01-2248 -JCB

3

17.   Hall v. Cisco Systems, Inc., et al., C-01-2347 -MEJ

Plaintiffs possess thirty days from the date of this Order to file and serve a consolidated complaint.

1.   The Batallas Derivative Suit

Fermaglich also moves that this Court consolidate Battalas v. Chambers, et al., C-01-20828-JW, with the above actions. The Court disagrees. The Battalas action is a derivative suit brought on behalf of Cisco against the directors of Cisco. In contrast, the above consolidated actions are securities class actions raised against Cisco by its shareholders. Moreover, Battalas does not raise the same questions of law as the consolidated securities class actions set forth above. The Court also notes that no party, including Fermaglich, opposed or replied to Battalas's Opposition to Fermaglich Plaintiffs' Motion for Consolidation. Accordingly, Fermaglich's request that this Court consolidate the Battalas action is DENIED.

B.   Lead Plaintiff

There are two competing motions filed by Plaintiffs to be appointed lead plaintiff in this action. Both the Cisco Investors Group and Fermaglich have filed motions with the Court to be selected as lead plaintiff and have their selection of lead counsel approved by the Court.

The Court will examine both the Cisco Investors Group and Fermaglich in turn to consider which of the two Plaintiffs should be appointed lead plaintiff.

1.   Cisco Investors Group

The Cisco Investors Group claims, collectively, to have lost $58,575,187.73 in connection with its transactions involving Cisco. In light of the fact that the Cisco Investors Group possesses the largest combined financial stake in the litigation, and allegedly meets the other criteria set forth in Rule 23, the Cisco Investors Group requests that this Court appoint it as lead plaintiff in this class action and approve their choice of co-lead counsels. The Cisco Investors Group is made up of three institutional investors, the Central States, Southeast and Southwest Area Pension Fund ("Central States Fund"), the Plumbers & Pipefitters National Pension Fund ("Plumbers Fund"), the Carpenters Pension Fund of Illinois ("Carpenters Fund"), and two individual investors, Alexander Nehring ("Nehring"), and John Petrera ("Petrera").

4

a.  Institutional Investors

The Central States Fund manages the pension benefits of teamsters and their families. The Cisco Investors Group asserts that the Central States Fund is one of the nation's largest Taft-Hartley funds with more than 185,000 active participants. As of December 31, 2000, the Central States Fund held assets in excess of $20 billion.

The Plumbers Fund operates the national pension fund for the United Association of Plumbers & Pipefitters. The Cisco Investors Group maintains that the Plumbers Fund possesses more than 125,000 participants and manages more than $4.4 billion in assets.

The Carpenters Fund, according to the Cisco Investors Group, retains more than 18,000 participants and holds more than $1 billion in assets.

b.  Individual Investors

In addition to the three institutional investors discussed above, the Cisco Investors Group possesses two individual investors, Nehring and Petrera. Nehring, a resident of Connecticut, serves as the president and chief executive officer of American Construction Technologies. Nehring purchased 234,100 shares of Cisco stock and allegedly lost in excess of $5.7 million. Petrera, a business consultant in San Jose, California, acquired 194,305 shares in Cisco and claims to have suffered more than $5 million in losses.

2.  William Fermaglich

Fermaglich, on the other hand, maintains that he sustained losses amounting to $7.9 million. According to Fermaglich, he purchased 325,860 shares of Cisco common stock and 300 Cisco options. Fermaglich's investment in Cisco allegedly constituted 90-95 percent of all of the assets owned by Fermaglich and his wife, Channa Fermaglich. Accordingly, Fermaglich moves that the Court appoint him lead plaintiff or, alternatively, co-lead plaintiff, in addition to approving his selection of lead counsel.

C.  Governing Statute

Section 21D(a)(3)(B)(1) requires that the Court "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately

5

representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(1). The statute imposes upon the parties a rebuttable presumption that the most capable plaintiff is that class member with the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

As outlined in Rule 23, the lead plaintiff (1) should be confronted with common questions of law or fact common to the class, (2) possess claims or defenses that are typical of the claims or defenses of the class, and (3) will fairly and adequately protect the interests of the class.

The Private Securities Litigation Reform Act ("PSLRA") expressly provides for the appointment of more than one lead plaintiff. Wenderhold v. Cylink Corp., 199 F.R.D. 577, 584 (N.D.Cal. 1999). The PSLRA specifically states that courts should select the "person or group of persons," that best fits the criteria set forth in the statute. §78u-4(a)(3)(B)(iii)(I). Plaintiffs may aggregate in small groups to serve as co-lead plaintiffs, especially in those circumstances where: (1) intra-class periods make it impossible for a single plaintiff to represent the class adequately or (2) the group of investors, functioning as a group, is more capable than any single plaintiff at exercising effective control over the litigation consistent with the goals of the PSLRA. *See* Hernandez v. Copper Mountain Networks, Inc., 2001 WL 789458 at 1(N.D.Cal. 2001); *see also* Wenderhold, 188 F.R.D. at 585 (numerous courts have permitted aggregation or appointed co-lead plaintiffs).

The underlying purpose of the PSLRA is to shift control of the litigation away from lawyers and into the hands of the relevant investors. *See* Bowman v. Legato Systems, Inc., 195 F.R.D. 655, 657 (N.D.Cal. 2000) (primary purpose of the Reform Act was to eradicate lawyer-driven litigation). In promulgating the PSLRA, Congress was attempting to address the issue of class action lawyers abusing and manipulating the interests of their clients in private securities lawsuits. In re Waste Management, Inc. Securities Litigation, 128 F.Supp.2d 401, 411 (S.D.Tex. 2000).

In this particular case, the Cisco Investors Group suffered the greatest combined financial loss. Its members claim to have sustained losses amounting to $58, 575,187.73. The PSLRA creates a presumption that the plaintiff with the largest financial interest in the action should serve as lead

1    plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); Hernandez, 2001 WL at 1.  Congress instituted this
2    presumption in order to increase the likelihood that institutional investors would serve as lead
3    plaintiffs in securities class actions.  House Conference Report No. 104-369, 104th Cong. 1st Sess.
4    at 34 (1995); Bowman, 195 F.R.D. at 657 (large institutional investors with significant monetary
5    losses are exactly the type of lead plaintiff envisioned by Congress when it enacted the PSLRA).

6        The Cisco Investors Group is made up of three such institutional investors, as well as two
7    individual investors. The Central States Fund possesses 185,000 active participants and held in excess
8    of $20 billion in assets as of December 31, 2000.  The Plumbers Fund maintains 125,000 participants
9    and $4.4 billion in assets.  Lastly, the Carpenters Fund manages 18,000 participants and more than
10   $1 billion in assets.  The three institutional investors in the Cisco Investors Group suffered losses
11   adding up to almost $48 million.  Such institutional investors are precisely the type of strong lead
12   plaintiff Congress envisioned courts would appoint as a result of the PSLRA. *See* Bowman, 195
13   F.R.D. at 658.

14       Fermaglich argues, however, that he should be appointed lead plaintiff because he possesses
15   the largest financial stake of any individual investor in the litigation.  Also, Fermaglich asserts that
16   the underlying policy of the PSLRA weighs against having unrelated groups, aggregated together for
17   the purposes of litigation, be selected by the Court as lead Plaintiff.

18       The Court finds, however, that Fermaglich has presented insufficient grounds to justify
19   selecting him as lead plaintiff in this litigation.  The fact that Plaintiff is the individual investor with
20   the largest financial stake in the litigation, on its own, is not sufficient to justify appointing him lead
21   plaintiff.  In fact, there is a preference for institutional investors, rather than individual investors,
22   serving as lead plaintiffs in securities class actions. According to the court in Bowman, "The Reform
23   Act was intended to create a new model for securities fraud litigation, under which the district court
24   would appoint a strong lead plaintiff who would actively manage the litigation on behalf of the class."
25   Bowman, 195 F.R.D. at 655.  Institutional investors, such as the ones in the Cisco Investors Group,
26   better fit that role.  *See* Ravens v. Iftikar, 174 F.R.D. 651, 661 (N.D.Cal. 1997) ("The Reform Act
27   affords large, sophisticated institutional investors a preferred position in securities class

actions...Congress sought to eliminate figurehead plaintiffs who exercise no meaningful supervision of litigation.")

Furthermore, the fact that Fermaglich suffered higher proportional losses than any other investor is also not necessarily material to the Court's analysis. *See* In re Critical Path, Inc., 2001 WL 883190 at 5 (N.D. Cal 2001) ("while it may be true that losing a high percentage of one's net worth due to an alleged fraud contributes to one's desire to prosecute...that desire is no substitute for the experience and resources of an institutional investor with...an in-house legal team and experience in the securities business.")  In fact, the Court believes that it was not typical of class members to invest more than ninety percent of their assets in Cisco stock, as was the case with Fermaglich. *See* Baby Neal v. Casey, 43 F.3d 48, 57-58 (3rd Cir. 1994) ("Typicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or...the legal theory upon which the claims are based differs...").

While the Court agrees that in most circumstances, large aggregations of unrelated investors, brought together by lawyers, with no pre-litigation relationship, are not ideally suited to serve as lead plaintiff, the Court finds that the circumstances in this particular case are distinguishable.  In light of the size and sophistication of the investors in the Cisco Investors Group, and after considering the declarations of the Parties, the Court concludes that there is no substantial risk that lawyers, rather than the plaintiff investors, will drive or control this litigation.  Even Fermaglich concedes that in certain circumstances, the Reform Act contemplates that a group of persons, combined together, may constitute the most adequate plaintiff to serve jointly as lead plaintiff in a securities class action. (Fermaglich's Memorandum of Points and Authorities in Support of Motion, 10).  The Court finds that this is such an instance.

Therefore, in light of the small size of the Cisco Investors Group, the large financial stake that it possesses in the outcome of this litigation, as well as the presence of sophisticated institutional and individual investors within the proposed group, the Court finds that the Cisco Investors Group best meets the requisite criteria for being appointed lead plaintiff and, hence, is the most adequate plaintiff to serve as lead plaintiff in this litigation. *See* In re Baan Company Securities Litigation,

186 F.R.D. 214, 217 (D.D.C. 1999) ("a court should generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers," quoting Memorandum of the Securities and Exchange Commission, Amicus Curiae.); *see also* Martin v. Atchinson Casting Corp., 200 F.R.D. 453, 456 (D. Kansas 2001) (A majority of courts addressing this issue have allowed for the appointment of a group of plaintiffs as lead plaintiffs but have limited the size of the group so as to avoid frustrating the purpose of the Reform Act).

Fermaglich has also argued, in the alternative, that he should be appointed co-lead plaintiff with the Cisco Investors Group. The Court is concerned, however, that adding Fermaglich as a co-lead plaintiff to this action would only possess a negative impact on the plaintiff investors' capacity to control the litigation. *See* Wenderhold, 188 F.R.D. at 586. In reviewing the submissions of all the Parties as well as all of the evidence before the Court, this Court finds that there is insufficient evidence or grounds to justify adding Fermaglich as a co-lead plaintiff. Naming Fermaglich as a co-lead plaintiff will not materially increase plaintiff investors' control over the litigation or strengthen the lead plaintiff's ability to manage the lawyers involved in the suit. In fact, the Court is concerned that adding Fermaglich as a co-lead plaintiff will only dilute the unity of the group and weaken their capacity to effectively manage this litigation. There is also no evidence that the Cisco Investors Group can or will be able to work effectively together with Fermaglich as co-lead plaintiffs in overseeing this litigation. As a result, Fermaglich's request to be included as a co-lead plaintiff is DENIED.

D.      Lead Counsel

The PSLRA provides that the lead plaintiff in the litigation "shall subject to the approval of the Court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). The Court may reject the lead plaintiff's selection of lead counsel only if it is necessary to protect the interests of the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). The Cisco Investors Group has selected the law firms of Milberg Weiss and Levin, Papantonio to serve as co-lead counsels for the class. In light of the substantial experience and success in litigating securities class actions that the aforementioned two law firms possess, the Cisco Investors Group's selection of co-lead counsels is hereby approved

9

by the Court.

## IV. CONCLUSION

For all of the aforementioned reasons, the Cisco Investors Group's Motion to Consolidate and for Appointment as Lead Plaintiff and Approval of Lead Counsel is GRANTED. Fermaglich's Motion for Appointment as Lead Plaintiff, and to Approve Lead Plaintiff's Choice of Counsel is DENIED.

The Court orders that the following actions be consolidated:

1. Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc., et al., C-01-20418-JW
2. Walanka v. Cisco Systems, Inc., et al., C-01-1587-MEJ
3. Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Cisco Systems, Inc., et al., C-01-20375-JW
4. Lloyd v. Cisco Systems, Inc., et al., C-01-1613-EDL
5. Rubin v. Cisco Systems, Inc., et al., C-01-1608 -MEJ
6. Caresio v. Cisco Systems, Inc., et al., C-01-1623 -MEJ
7. Deitel v. Cisco Systems, Inc., et al., C-01-1629 -MEJ
8. Schneier v. Cisco Systems, Inc., et al., C-01-1641 -EDL
9. Kofsky v. Cisco Systems, Inc., et al., C-01-1683 -EDL
10. Hsu v. Cisco Systems, Inc., et al., C-01-1699 -JL
11. Orlando v. Cisco Systems, Inc., et al., C-01-1719 -MEJ
12. Maurer v. Cisco Systems, Inc., et al., C-01-1743 -WDB
13. Campanella v. Cisco Systems, Inc., et al., C-01-1946 -JCS
14. Mayer v. Cisco Systems, Inc., et al., C-01-2006 -MEJ
15. Norell v. Cisco Systems, Inc., et al., C-01-2165 -WDB
16. Taylor v. Cisco Systems, Inc., et al., C-01-2248 -JCB
17. Hall v. Cisco Systems, Inc., et al., C-01-2347 -MEJ

1 | The Cisco Investors Group, as lead plaintiff in this litigation, possesses thirty days from the date of
2 | this Order to file and serve a consolidated complaint.

Dated: November 14, 2001                              /S/
                                                     JAMES WARE
01116091civJWLC2                                     United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

George E. Barrett     gbarrett@barrettjohnston.com,

Stuart L. Berman     sberman@sbclasslaw.com,

Patrice L. Bishop     service@secfraud.com

Michael D. Braun     service@secfraud.com

George H. Brown     gbrown@hewm.com,

Spencer A. Burkholz     spenceb@mwbhl.com,

Frederick B. Burnside     fredb@mwbhl.com,

Daniel S. Drosman     DanD@MWBHL.com,

Daniel C. Girard     gg@classcounsel.com,

Lionel Z. Glancy     info@glancylaw.com,

Thomas J. Harrison     tharrison@whhf.com,

Marc S. Henzel     mhenzel182@aol.com

Robert A. Jigarjian     gg@classcounsel.com,

Willem F. Jonckheer     wjonckheer@schubert-reed.com,

Reed R. Kathrein     REEDK@mwbhl.com

Michele F. Kyrouz     mkyrouz@brobeck.com,

Michele F. Kyrouz     mkyrouz@brobeck.com,

Felix Lee     flee@brobeck.com,

William S. Lerach     regank@mwbhl.com; susannah@mwbhl.com

Jordan L. Lurie     service@wyca.com

Betsy C. Manifold     , manifold@whafh.com

Kevin P. Muck     kmuck@brobeck.com

Brian J. Robbins     robbins@classlawyer.com,

Darren J. Robbins     DRobbins@mwbhl.com,

12

Stuart H. Savett     mail@savettlaw.com,

James G. Stranch     jgs@branstetterlaw.com,

Richard Appleby
Law Offices of Richard Appleby
42 Broadway, 19th Floor
New York, NY 10004

Francis A. Bottini
Wolf Haldenstein Adler Freeman & Herz
Symphony Towers
750 B Street
Suite 2770
San Diego, CA 92101

Curtis Bowman
P.O. Box 25438
Little Rock, AR 72221-5438

Jules Brody
Stull Stull & Brody
6 East 45th Street
New York, NY 10017

Leo W. Desmond
Law Offices of Leo W. Desmond
2161 Palm Beach Lakes Blvd
Suite 204
West Palm Beach, FL 33409

John Emerson
The Emerson Firm
2600 South Gessner
Suite 600
Houston, TX 77063

John C. Evans
Specter Specter Evans & Manogue, P.C.
Koppers Building
26th Floor
436 7th Avenue
Pittsburgh, PA 15219-1818

Brian M. Felgoise
Law Offices of Brian M. Felgoise
230 South Broad Street
Suite 404
Philadelphia, PA 19102

Jack G. Fruchter
Fruchter & Twersky

13

60 East 42nd Street
47th Floor
New York, NY 10165

Frederick W. Gerkens
Wechsler Harwood Halebian & Feffer, LLP
488 Madison Avenue, 8th Floor
New York,, NY 10022

Roger Greenberg
Greenberg Peden P.C.
12 Greenway Plaza
10th Floor
Houston, TX 77046

Deborah R. Gross
Law Offices of Bernard M. Gross PC
1500 Walnut Street
Sixth Floor
Philadelphia, PA 19102

John Halebian
Wechsler Harwood Halebian & Feffer LLP
488 Madison Avenue
8th Floor
New York, NY 10022

Fred T. Isquith
Wolf Haldenstein Adler Freeman & Herz
270 Madison Avenue
New York, NY 10016

Michael Jafee
Wolf Haldenstein Adler Freeman & Herz
270 Madison Avenue
New York, NY 10016

Joshua M. Lifshitz
Bull & Lifshitz, LLP
246 West 38th Street
New York, NY 10018

Joseph V. McBride
Rabin & Peckel LLP
275 Madison Avenue
New York, NY 10016

Gregory M. Nespole
Wolf Haldenstein Adler Freeman & Herz
270 Madison Avenue
New York, NY 10016

Charles J. Piven

14

Law Offices of Charles J. Piven, P.A.
401 East Pratt Street
Suite 2525
Baltimore, MD 21202

Scott E. Poynter
P.O. Box 25438
Little Rock, AR 72221-5438

Marc A. Topaz
Schiffrin & Barroway
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004

Curtis V. Trinko
Law Offices of Curtis V. Trinko
16 West 46th Street
Seventh Floor
New York, NY 10036

Melvyn I. Weiss
Attorney at Law
One Pennsylvania Plaza
New York, NY 10119-1063

**Dated:**                                                  **Richard W. Wieking, Clerk**

                                                            **By:**_____
                                                                **Ronald L. Davis**
                                                                **Courtroom Deputy**