IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Plumbers & Pipefitters Local 572 Pension fund et al., <br><br> Plaintiff(s), <br> v. <br><br> Cisco Systems, Inc. et al., <br><br> Defendant(s). | NO. C 01-20418 JW <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO VACATE DISCOVERY ORDER ISSUED BY THE SPECIAL MASTER** |

## I. INTRODUCTION

Lead Plaintiffs Plumbers & Pipefitters National Pension Fund ("Plumbers"), Central States, Southeast and Southwest Area Pension Fund ("Central States"), Carpenters Pension Fund of Illinois ("Carpenters"), and Alexander Nehring (collectively "Plaintiffs"), move to vacate Special Master Edward Infante's Order Granting Defendant's Motion to Compel Interrogatory Answers and Documents. Pursuant to Local Rule 7-1(b), this Court deemed the matter submitted on May 4, 2005. However, after further review of the parties' papers, this Court deemed it beneficial to have oral arguments on the motion. The motion was heard on June 13, 2005. For the reasons set forth below, Plaintiffs' Motion to Vacate Special Master's Order is DENIED.

## II. BACKGROUND

Plaintiffs allege that Cisco and its top officers and directors, and its accountants issued a serious of false and misleading public statements regarding Cisco's accounting, financial results, business and prospects, all in violation the federal securities laws. Plaintiffs allege that the false and misleading statements artificially inflated Cisco's stock price throughout the Class Period to $82 per share. Plaintiffs allege that while the stock price was inflated, the Individual Defendants dumped over

1  $609 million of their personal Cisco stock, which was 73% of their holdings. After the Individual
2  Defendants sold their stock, on February 6, 2001, Cisco announced its financial results for the fiscal
3  2001 second quarter, which allegedly caused Cisco's stock to fall 17% on a volume of 279 million
4  shares. The Complaint alleges all Defendants violated §10(b) of the Exchange Act, 15 U.S.C. §78j(b),
5  and SEC Rule 10b-5 promulgated thereunder; that Defendants Cisco and Chambers violated §20(a) of
6  the Exchange Act, 15 U.S.C. §78t(a), and that all the Individual Defendants violated §20A of the
7  Exchange Act, 15 U.S.C. §78t-1.

8  The First Amended Complaint ("FAC") filed on December 6, 2002, alleged that "over 100
9  persons, including former Cisco employees . . . and Cisco customers, providers and suppliers"
10 furnished information for the facts contained in the FAC. (FAC ¶ 60(d).) On November 25, 2003, this
11 Court issued an order appointing Magistrate Judge Edward A. Infante as Special Discovery Master.
12 Pursuant to the Order, the parties submitted a joint stipulation, which they agreed that "all orders
13 issued by the Special Master shall have the same force and effect as if issued by a Magistrate Judge of
14 this Court." (Stip. and Order Appointing Special Disc. Master at 4.)

15 During the course of discovery, Defendants served Larry Carter's First Set of Interrogatories
16 and First Set of Request for Documents, and also Cisco System's Second Set of Requests for
17 Documents. Plaintiffs made timely objections to the requested discovery. Subsequently, on February
18 3, 2005, the Defendants filed a Motion to Compel Plaintiffs to produce documents and answer
19 interrogatories. On March 10, 2005, after oral arguments on the Motion to Compel, Special Master
20 Infante issued an order granting Defendants' motion (the "Order"), and Plaintiffs were served with the
21 Order on March 14, 2005. Plaintiffs filed their objections on March 28, 2005, seeking to vacate the
22 Special Master's Order Granting Defendants' Motion to Compel on the ground that the compelled
23 disclosure violates the work product doctrine and the protection of whistleblowers, thus "clearly
24 erroneous and contrary to law." Thus, Plaintiffs seek to vacate the Order with respect to the
25 following:

26     1. With respect to Larry Carter's Interrogatory No. 1, which seeks the "identi[ty] [of] all
27     PERSON(s) [interviewed by plaintiffs' counsel during the course of counsel's

28     2

investigations],";

2.  With respect to Larry Carter's Interrogatories Nos. 2-8 and 10-13, which were modified by the Special Master to seek the identity of all persons who plaintiffs "contend have information supporting" certain allegations and the identity of all documents that "support" certain allegations;

3.  With respect to Larry Carter's Interrogatoy No. 9, which seeks the identity of the "ISP referenced" in plaintiffs' Complaint;

4.  With respect to Larry Carter's Document Request No. 1, which seeks production of all documents provided to plaintiffs by the persons interviewed by plaintiffs' counsel;

5.  With respect to Larry Carter's Document Request No. 2, which seeks production of all documents provided to plaintiffs by the persons interviewed by plaintiffs' counsel, plaintiffs';

6.  With respect to Larry Carter's Document Requests Nos. 3-13, which seek production of "all documents supporting" certain allegations;

7.  With respect to Cisco System, Inc.'s Document Requests Nos. 41-51, which seek production of "all documents regarding, referring to, relating to, or supporting" certain allegations;

(Pls.' Proposed Order Vacating Special Disc. Master Order.)

The Court notes that the Plaintiffs' proposed order contains language of the Special Master's Order as interpreted by the Plaintiffs.

## III. STANDARDS

Ordinarily, the district court reviews all objections to a special master's findings of fact *de novo* "unless the parties stipulate with the court's consent that the master's findings will be reviewed for clear error." Fed. R. Civ. P. 53(g)(3)(A). The district court also reviews *de novo* all "objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(g)(4). However, the parties in this case stipulated that "[a]ll orders issued by the Special Master shall have the *same force and effect as if issued by a Magistrate Judge of this Court*." (Stip and Order Appointing Magistrate Judge Infante as Special Discovery Master ¶ 3) (emphasis added). Thus, as stipulated, the proper

3

standard of review for findings of fact by the Special Master is equivalent to a United States Magistrate Judge. See 28 U.S.C. §636(b)(2) (West 2005).

Under 28 U.S.C §636(A), a District Judge may overrule a Magistrate Judge's order if it is "clearly erroneous or contrary to law." §636(A); Fed. R. Civ. P. 72. Moreover, pre-trial objections to matters concerning discovery are generally not considered to be dispositive since they do not resolve the case on the merits. See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). A magistrate judge's factual determinations are subject to the "clearly erroneous" standard. Maisonville v. F2 Am., Inc., 902 F.2d 746, 748 (9th Cir. 1990). Under this standard, factual findings are not clearly erroneous unless the "'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citation omitted). On the other hand, a Magistrate Judge's conclusions of law are subject to the "contrary to law" standard, which amounts to a *de novo* review. In re MTI Tech. Corp. Sec. Litig. II, 2002 WL 32344347 (C.D. Cal. June 13, 2002) (citations omitted); see also Anderson, 470 U.S. at 573 (citations omitted). Mixed questions of law and fact are also subject to *de novo* review. Id.

## IV. DISCUSSION

As a preliminary matter, Plaintiffs' objections to the Order are timely because they were filed "[w]ithin 10 days after being served with a copy of the magistrate judge's order." Fed. R. Civ. P. 72. Although Defendants argue that Plaintiffs' objections were untimely pursuant to Rule 6(b) because the appeal was filed after the deadline for compliance had expired, Rule 6(b) gives the Court wide discretion to enlarge these time limits. See Fed. R. Civ. P. 6(b). Thus, this Court elects to evaluate Plaintiffs' motion on the merits.

Plaintiffs have objected to Special Master Infante's Order Granting Defendants' Motion to Compel on the ground that it was clearly erroneous or contrary to law. In particular, Plaintiffs argue that the Order compels the discovery of protected work product, which also jeopardizes the identities of the "whistleblowers."

**A.    The Work Product Doctrine**

4

The party seeking to invoke the work product doctrine bears the initial burden of establishing that the request at issue was prepared in anticipation of litigation. United States v. 22.80 Acres of Land, 107 F.R.D. 20, 22 (N.C. Cal. 1985). However, the party seeking discovery of otherwise protected work bears the ultimate burden of proving that there is a substantial need for the materials that cannot be obtained without undue hardship. Rule 26(b)(3); see also Hickman v. Taylor, 329 U.S. 495, 511-12 (1947). Thus, the Supreme Court in Hickman established the "work product doctrine" in order to protect "mental impressions, conclusions, opinions, or legal theories of [opposing] attorneys" and to "prevent parties from borrowing the wits of their adversaries." Hickman v. Taylor, 329 U.S. 495 (1947); United States ex rel. Bagley v. TRW, Inc. 212 F.R.D. 554, 559 (C.D. Cal. 2003) (citing text). While the work product doctrine does not protect underlying factual matters that are contained in a document which is not itself discoverable, it affords a *qualified* protection from discovery all trial preparation materials prepared "in anticipation of litigation." Hickman v. Taylor, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3). If the party invoking the protection establishes the applicability of the work product doctrine, the qualified protection can be overcome by "a showing that the party seeking the discovery has substantial need of the materials," and that "the party is unable, without undue hardship, to obtain the substantial equivalent of the material by other means." Fed. R. Civ. P. 26(b)(3).

### 1. Interrogatories

Plaintiffs argue that the Order compels the discovery of protected work product by requiring Plaintiffs to answer interrogatories that require them to specify the identity of persons counsel selected to interview to support various allegations in their Complaint. Defendants counter that the Order only "requires Plaintiffs to identify the fact witnesses they chose to highlight in the FAC." (Cisco Def. Opp'n at 14.)

Whether the identities of the persons and the documents sought by the interrogatories are protected by the work product doctrine is unclear. While there are some generally accepted principles, there seems to be a split among the district courts on the specific issue before the Court.

5

Moreover, both parties cite non-binding case law in support of their respective positions.[1]

It is generally accepted that the "work product doctrine does not protect against the disclosure of facts or the identity of persons from whom the facts are learned." Hoffman v. United Telecommunications, Inc., 117 F.R.D. 440, 444 (D.Kan., 1987). Specifically, parties may be compelled to disclose the identity of persons having knowledge, but may not be forced to disclose which of these individuals have in fact been interviewed. Laxalt v.McClatchy, 116 F.R.D. 438, 443 (D. Nev. 1987). "When the terms of the interrogatory are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable." Mass. v. First Nat'l Supermarkets, Inc., 112 F.R.D 149, 152 (D. Mass. 1986). The Court is persuaded by the rationale underlying this distinction; that is, "if the identity of interviewed witnesses is disclosed, the opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." In re MTI Tech. Corp. Sec. Litig. II. 2002 WL 32344347 (C.D. Cal. June 13, 2002).

The Court has read and considered both In re Aetna Inc. Securities Litigation and Miller v.

---

[1] Compare In re Aetna Inc. Sec. Litig., 1999 WL 354527 (E.D. Pa. 1999) (granting defendants' motion to compel response to interrogatories seeking the identity of persons described in the complaint, where plaintiffs' objected on work product grounds and provided a list of 750 individuals with discoverable information); In re Theragenics Corp. Sec. Litig., 205 F.R.D. 631 (N.D. Ga.2002) (finding Aetna persuasive and granting defendants' motion to compel answers to interrogatories seeking the identities of persons the plaintiffs relied on in making allegations in the complaint); In re Northpoint Communications Group, Inc., Securities Litigation, 221 F.Supp.2d 1090 (N.D. Cal. 2002) (holding that when a plaintiff relied upon confidential witnesses to obtain information to meet heightened pleading requirements, the plaintiff must disclose the identities of those witnesses upon proper interrogatory) ; Miller v. Ventro Corp., 2004 WL 868202 (N.D. Cal. 2004) (holding that a list of twenty-two confidential witnesses does not constitute work product, and even if it did, the need for information outweighs any minimal protection) ; with In re MTI Technology Corp. Sec. Litig. II, 2002 U.S. (C.D. Cal. 2002) (finding Aetna unpersuasive and holding that the identity of the witnesses interviewed by the attorneys and linked to specific allegations in the complaint was protected by the work product doctrine, and 71 potential witnesses was a manageable number); In re Ashworth, Inc., Sec. Litig., 213 F.R.D. 385 (S.D. Cal. 2002) (finding MTI persuasive and denied a motion to compel identification of witnesses who provided information that formed the basis for any allegations in the complaint based on the work product doctrine).

6

Ventro, two cases which Defendants heavily relied in supporting their argument against a finding of the applicability of the work product doctrine. In holding that the identities of individuals interviewed were not work product, both courts expressed that the information sought is "relevant to the subject matter involved in the pending action" and is "reasonably calculated to lead to the discovery of admissible evidence." In re Aetna Inc. Sec. Litig., 1999 WL 354527, 2 (E.D. Pa. May 26, 1999); Miller v.Ventro Corp., 2004 WL 868202, 2 (N.D. Cal. April 21, 2004) ("the identities of those individuals are highly relevant and reasonably calculated to lead to discoverable evidence."). While it may be true that the identities of those interviewed are relevant to the action and may lead to discoverable evidence, that alone does not make an otherwise protected work product discoverable without a showing of substantial need and undue hardship. Essentially, In re Aetna and Miller ignore the possibility that a "discussion of factual matters may reveal counsel's tactical or strategic thoughts," which is at the heart of the work product doctrine. See Mass v. First Nat'l Supermarkets, Inc., 112 F.R.D 149.

In applying the rationale articulated in In re MTI Tech. Corp. and In re Ashworth, with respect to Interrogatory No. 1, the Court finds that the request to "IDENTIFY all PERSON(S) referenced at page 50, lines 3-7 of the COMPLAINT" constitutes work product. Investigatory interviews that lead up the litigation clearly satisfy the "in the anticipation of litigation" requirement. However minimally the work product protection is implicated here, responses to Interrogatory No. 1 would allow Defendants to infer the importance of these witnesses, revealing Plaintiffs' legal theories and conclusion. Lines 3-7 of the Complaint state:

> These facts and the facts set forth in section (d) of other statements herein are based on the investigation of plaintiffs' counsel, which included interviews with over 100 persons, including former Cisco employees who were employed by Cisco during the Class Period in the sales, finance, manufacturing and other various divisions, and Cisco customers, providers, and suppliers and information in the public domain.

(Complaint at 50:3-7.) Examining the plain language used in the interrogatory, along with line 3-7 of

7

1  page 50 of the Complaint, the Court agrees with the Plaintiffs that the interrogatory requests them to
2  list "all persons that they interviewed during the course of their investigation." (Mot. to Vacate at 1.)
3  The only persons referenced in the Complaint were persons that were interviewed. Defendants have
4  chosen to frame their interrogatory in a way that specifically asks for the identification of persons
5  interviewed by Plaintiffs' counsel, which is contrary to law. See MTI Tech. Corp., 2002 WL
6  32344347 (holding that parties may not specifically demand the identities of witnesses interviewed or
7  relied upon by counsel).

8  However, notwithstanding a finding of work product protection, under the circumstances of
9  this case, the Court also finds that the Defendants have made the requisite showing of substantial need
10 and undue hardship to overcome the qualified protection from the discovery of a list of persons
11 interviewed. Due to the approaching September 30 discovery cut-off date and the long list of potential
12 witnesses, the need for the information outweighs the minimal work product protection. See Miller,
13 2004 WL 868202 (holding that due to the timing of the case (discovery cut-off date is in approximately
14 4 months) and to the list of 200 potential witnesses, need for the information is established)). As
15 noted by Defendants, In re Ashworth and In re MTI Tech. Corp. emphasized the number of potential
16 universe of witnesses set forth in Plaintiffs' initial disclosures as a factor in determining substantial
17 need and undue hardship. See In re Ashworth, 213 F.R.D. at 389-90 (Unlike In re Aetna, where
18 plaintiffs' initial disclosures listed 750 names, the 100 potential witnesses identified in this case, who
19 are current or former employees or sales representatives of the defendant is manageable); In re MTI
20 Tech. Corp., 2002 WL 32344347, at * 4 (plaintiffs' initial disclosures only identified 71 witnesses).
21 In this case, Plaintiffs produced a list of over 1200 potential witnesses in their Rule 26 initial
22 disclosure, which far exceeds the 750 names provided in In re Aetna. Sifting through the 496 names
23 listed under the "Current or Former Employees of Cisco" section alone is clearly burdensome, and
24 only hinders the development of facts to enable the Defendants to prepare a defense against Plaintiffs'
25 claims. Accordingly, Plaintiffs are required to respond to Interrogatory No. 1.

26 With respect to the amended Interrogatories Nos. 2-13 which request Plaintiffs to "IDENTIFY
27 all PERSON(S) (and all DOCUMENTS) who [Plaintiffs] contend to have information supporting"
28

8

particular allegations, the Court finds that these are proper. As amended, Interrogatories Nos. 2-13 are in accordance with the general principle that the work product doctrine does not shield the discovery of documents or people with knowledge of the facts relevant to Plaintiffs' claim. In re Convergent Tech. Sec. Litig., 108 F.R.D. 328, 340-41 (D.C. Cal. 1985). While the response to these interrogatories may include names of persons interviewed, it does not specifically request a list of persons interviewed by Plaintiffs' counsel. Thus, Plaintiffs are required to respond to Interrogatories Nos. 2-13.

### 2. **Production of Documents**

Plaintiffs also argue that the Order compelling them to produce (or identify) documents they used in preparing their Complaint would violate the work product doctrine because it "would reveal information about the attorney's mental processes in preparing the case." (Mtn. to Vacate at 15.) Defendants, however, argue that the request for production of documents "merely requires Plaintiffs to produce (or identify) documents that support or relate to various allegations made in the FAC." (Cisco Def. Resp. at 7.)

As mentioned previously, underlying fact documents cannot be shielded from discovery. While individual fact documents may itself be discoverable, circumstances exist where the "selection and compilation of documents by counsel . . . in preparation for pretrial discovery" may reveal an attorney's thought processes and fall within the protection of the work product doctrine. Sporck v. Peil, 759 F.2d 312 (3rd Cir. 1985) (holding that grouping and selection of documents counsel used to prepare witness for deposition was protected by the work product doctrine); James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 144 (D. Del. 1982) (holding that a document binder compiled by counsel undiscoverable).

After reviewing the request for production of documents, the Court agrees with Defendants that the "Order requires Plaintiffs to produce documents actually referenced in the FAC or which otherwise constitute evidence supporting or relating to those allegations." (Cisco Def. Resp. at 9). There is nothing unusual about a discovery request asking Plaintiffs to produce or identify documents relating to or supporting allegations made in their FAC. Moreover, this is not a situation where

Plaintiffs are requested to produce a compilation of documents, but only documents referenced in their FAC. Therefore, Defendants are entitled to know the factual basis of Plaintiffs' claims in order to prepare for trial.

Plaintiffs also contend that the discovery requested is either publicly available to Defendants or already in Defendants' possession, and therefore, Plaintiffs have no obligation to produce requested documents. The Court, of course, does not expect Plaintiffs to produce documents to which they currently do not have access or have in their possession. However, the Court can see no justifiable reason why Plaintiffs should not produce, or at least identify, documents that support Plaintiffs' allegations in the FAC, whether they are in Defendants' possession or in the public domain. See, e.g., St. Paul Reinsurance Co. V. Commercial Fin. Corp., 198 F.R.D. 508, 513 (N.D. Iowa 2000) ("It is not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record."). As the Order stated, Plaintiffs need not produce documents that have already been produced by Defendants, but only identify them by bates number. (Order at 2.) Finally, Defendants are correct in noting that Plaintiffs have not made a showing that the documents requested were prepared "in anticipation of litigation," triggering the protection of the work product doctrine. Thus, Plaintiffs are required to comply with the document requests.

## B.   **Whistleblower Protection**

Since the Court has found that Plaintiffs' sources must be identified, it is appropriate for the Court to address Plaintiffs' assertion that such identification would violate the protections afforded to whistleblowers and informants. See infra. Specifically, Plaintiffs contend that whistleblowers face a risk of retaliation when coming forward against either a former or current employee. Although Plaintiffs recognize that informant privilege is typically reserved for governmental actions[2], Plaintiffs nevertheless contend that the informant privilege is equally applicable in this private securities class

---

[2] All of Plaintiffs' cases in support of the applicability of the informant's privilege arose in the context of criminal investigations. (See Plf. Obj. at 14). See 8 Wright, Miller, et al., Federal Practice and Procedure, Civil 2d § 2019 (2d. 1994) ("What is usually referred to as the informer's privilege is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.")

1 action that serves a quasi-governmental role to prevent the disclosure of an informant's identity. (See
2 Mtn. to Vacate at 14.) Although Plaintiffs are correct in that the enforcement of securities law has a
3 quasi-governmental role, the Court rejects the applicability of the informant privilege. Plaintiffs have
4 not cited any case law supporting the contention that informant privilege should be applied to civil
5 cases. Since the whistleblower protection, as discussed below, is inapplicable to Plaintiffs' sources
6 who consists of customers, suppliers and other third parties, their identities must be revealed.

7 The Court recognizes that whistleblowers may need protection from retaliation. See e.g.,
8 Mgmt. Info. Tech., Inc. v. Alyeska Pipeline Serv. Co., 151 F.R.D. 478 (D.C. 1993) (taking into
9 consideration the interests of unidentified whistleblowing employees when confronted with motion to
10 compel). "Whistleblowers" are either former or current employees who provides information in an
11 investigation against their employer. See Hodgson v. Charles Martin Inspectors of Petroleum, 459
12 F.2d 303 (5th Cir. 1972). The Court is aware that retaliation against current whistleblowing
13 employees may include loss of job or demotion while former whistleblowing employees may be
14 subjected to harassment by new employers or dampen their job-searching efforts. Id. In seeking
15 whistleblower protection to shield the disclosure of whistleblower employees, Plaintiffs bear the
16 burden of justifying this objection. Miller, 2004 WL 868202, at * 9.

17 Based on the Motion to Vacate and Reply submitted by Plaintiffs, the Court finds that Plaintiffs
18 have not provided any evidence indicating that there is a real fear of retaliation from Cisco. As
19 Defendants noted, "Plaintiffs have never provided a declaration or any other evidence even hinting
20 that any witness has the slightest concern about retaliation," nor did Plaintiffs even refer to any
21 witnesses as "confidential." (Cisco Def. Resp. at 20.) Furthermore, the Court is unaware of any
22 request to enter a protective order to limit the disclosure of these witnesses' identities, which weighs
23 against Plaintiffs' whistleblower argument. Since Plaintiffs have failed to make a "particular and
24 specific demonstration of fact, as distinguished from stereotyped and conclusory statements," their
25 whistleblower arguments fail.

26 In sum, the Court finds that the relevance of the witnesses testimony is their knowledge of the
27 underlying facts. Thus, any examination of identified individuals shall only include what if anything
28

11

they knew, and how they came to know it, but not the substance of their discussions with Plaintiffs' counsels or counsels' representatives.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Vacate Special Master's Discovery Order.

Dated: June 21, 2005

      /s/ James Ware
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alice L. Jensen ajensen@fenwick.com
Brian J. Robbins robbins@ruflaw.com
Bruce C. Gibney bgibney@hewm.com
Connie Cheung conniec@milberg.com
Daniel C. Girard girardgibbs@girardgibbs.com
Daniel S. Drosman DanD@lerachlaw.com
Daniel T. Rockey drockey@hewm.com
Darren J. Robbins e_file_sd@lerachlaw.com
Dean S. Kristy dkristy@fenwick.com
Eric J. Belfi ebelfi@murrayfrank.com
Ethan Richard York eyork@winston.com
Felix Lee flee@fenwick.com
George E. Barrett gbarrett@barrettjohnston.com
George H. Brown gbrown@hewm.com
James G. Stranch jgs@branstetterlaw.com
Kevin P. Muck kmuck@fenwick.com
Lesley E. Weaver lesleyw@milberg.com
Lionel Z. Glancy info@glancylaw.com
Matthew Paul Montgomery mattm@lerachlaw.com
Michael L. Rugen mrugen@hewm.com
Norman J. Blears nblears@hewm.com
Patrice L. Bishop service@ssbla.com
Robert A. Jigarjian CAND.USCOURTS@CLASSCOUNSEL.COM
Ruth Marian Bond Rbond@hewm.com
Spencer A. Burkholz SpenceB@lerachlaw.com
Stuart L. Berman sberman@sbclasslaw.com
Willem F. Jonckheer wjonckheer@schubert-reed.com
William S. Lerach billl@lerachlaw.com

**Dated: June 21, 2005**                                **Richard W. Wieking, Clerk**

                                                        **By:   /s/ JW Chambers**
                                                        **Ronald L. Davis**
                                                        **Courtroom Deputy**