IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Plumbers & Pipefitters Local 572 Pension fund et al., | NO. C 01-20418 JW |
| Plaintiff(s), | **ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| Cisco Systems, Inc. et al., | |
| Defendant(s). | |

## I. INTRODUCTION

This is a securities fraud class action pursuant to § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder. Specifically, it is brought on behalf of Plaintiffs Plumbers & Pipefitters National Pension Fund, Central States, Southeast and Southwest Area Pension Fund, Carpenters Pension Fund of Illinois, and Alexander Nehring (collectively, "Plaintiffs") who purchased Cisco Common stock between August 10, 1999 and February 6, 2001 (the "Class Period"). Plaintiffs filed this suit against Cisco Systems, Inc. ("Cisco"), several Cisco Officers and Directors (the "Individual Defendants") (collectively, "Cisco Defendants") and Cisco's accounting firm Pricewaterhousecoopers LLP ("PWC"). Plaintiffs assert that Defendants violated § 10(b) of the 1934 Securities and Exchange Act (the "Act"). Plaintiffs also claim that Cisco and its president and CEO, John Chambers ("Chambers"), violated § 20(a) of the Act.

Presently before the Court is Cisco Defendants' Motion for Judgment on the Pleadings ("Motion") (Docket Item No. 373). A hearing on Defendant's motion was set for June 27, 2005. However, the Court found it appropriate to take the motion under submission without oral argument

pursuant to Civil Local Rule 7-1(b). Based on the arguments advanced by counsel in their briefs, Cisco Defendants' Motion is DENIED.

## II.  BACKGROUND

On April 20, 2001, Plaintiffs filed a class action suit against Cisco and its officers and directors. Shortly thereafter, sixteen other Plaintiffs filed similar class action lawsuits against Cisco. The Court consolidated these cases in November 2001.

Cisco is one of the largest manufacturers of Internet telecommunications equipment. It was founded in 1984 at Stanford University, and became publicly traded in 1990. From the date it went public until the stock market slow down in late 2000, Cisco experienced very successful and profitable growth. In particular, Cisco achieved several years of multi-billion-dollar profits and the acquisition of dozens of companies.

During the Class Period, Plaintiffs purchased Cisco stock with hopes of also profiting from Cisco's success. At the start of the Class Period, in August 1999, Cisco's stock price reached $30 per share, and by March 27, 2000 the price skyrocketed to just over $80 per share. That same month, the NASDAQ reached its all time high, topping over 5000. Less than a year later, Cisco's stock price dropped to less than $20 per share despite the company's optimistic forecasts late in 2000.

Plaintiffs allege that Cisco and its top officers and directors, and its accountants issued a serious of false and misleading public statements regarding Cisco's accounting, financial results, business and prospects, all in violation the federal securities laws. Plaintiffs allege that the false and misleading statements artificially inflated Cisco's stock price throughout the Class Period to $82 per share. Plaintiffs allege that while the stock price was inflated, the Individual Defendants dumped over $609 million of their personal Cisco stock, which was 73% of their holdings. After the Individual Defendants sold their stock, on February 6, 2001, Cisco announced its financial results for the fiscal 2001 second quarter, which allegedly caused Cisco's stock to fall 17% on a volume of 279 million shares.

Plaintiffs assert that Defendants made untrue statements of material fact and/or omitted statements of material fact in violation of § 10(b) of the Act. Plaintiffs contend that they relied on

2

these misstatements when purchasing Cisco common stock. In addition, Plaintiffs contend that Defendant Chambers directly (or indirectly) influenced and controlled the alleged fraudulent conduct of Cisco, and, therefore, is also liable under § 20(a) of the Act. Finally, Plaintiffs claim that they purchased Cisco common stock contemporaneously with the Individual Defendants' sales of Cisco stock. Plaintiffs allege that at least some of these sales were made with reliance on insider information in violation of §20A of the Act. Defendants deny these allegations.

On October 27, 2002, the Court granted the Defendants' first motion to dismiss because the Plaintiffs' complaint failed to include simple, concise, and direct averments, and failed to state with particularity the circumstances constituting fraud or mistake. In its October 27, 2002 Order, the Court set forth a detailed description of the format Plaintiffs needed to employ in order to clarify their substantive allegations. Plaintiffs filed an amended consolidated complaint. Thereafter, Defendants filed its second motion to dismiss Plaintiffs' amended consolidated complaint. On April 23, 2003, the Court denied Defendants' motion because Plaintiffs conformed with the Court's previous order.

Presently before the Court is Cisco Defendants' Motion for Judgment on the Pleadings ("Motion"). Cisco Defendants contend that the recent Supreme Court decision in Dura Pharms., Inc. v. Broudo, 125 S.Ct. 1627, 1631 (2005), mandates dismissal of the case because Plaintiffs cannot plead loss causation under Dura. For the reasons set forth below, Cisco Defendants' Motion is DENIED.

### III. STANDARDS

Fed. R. Civ. P.12(c) provides "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings, like a motion to dismiss for failure to state a claim, addresses the sufficiency of a pleading. A district court applies essentially the same standard on a Rule 12(c) motion as motions brought pursuant to Rule 12(b)(6). See 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (2005). A court must accept as true all allegations of material fact and must construe said allegations in the light most favorable to the non-moving party. Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). However, a court need not accept or make unreasonable inferences or unwarranted deductions of fact. McKinney v. De Bord, 507 F.2d 501, 504

3

(9th Cir.1974). Judgment on the pleadings is appropriate when a plaintiff's complaint fails to meet the pleading standards established by the Private Securities Litigation Reform Act of 1995 (PSLRA). Heliotrope General, Inc. V. Ford Motor Co., 189 F.3d 971, 979 (9th Cir. 1999).

## IV. DISCUSSION

**A. Violation of Section 10(b)**

    **1. Loss Causation under Dura and progeny**

Section 10(b) of the Securities Exchange Act of 1934 forbids "any person. . . [t]o use or employ, in connection with the purchase or sale of any security. . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe[.]" 15 U.S.C. § 78j(b). SEC Rule 10b-5, promulgated under the authority of section 10(b), in turn, forbids the making of any "untrue statement of material fact," or the omission of any material fact "necessary in order to make the statements made. . . not misleading."  CFR § 240.10b-5. Additionally, under the Private Securities Litigation Reform Act's (PSLRA), plaintiffs must also prove that a defendant's securities fraud caused their economic loss. 15 U.S.C. § 78u-4(b)(4). The statute provides, in relevant part, the following:

> Loss causation. In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.

Id. Thus, in a Rule 10b-5 claim, Plaintiff must prove that (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss. In re Daou Systems, Inc., 411 F.3d 1006, 1014 (9th Cir. 2005) (citing Dura Pharms., Inc. v. Broudo, 125 S.Ct. 1627, 1631 (2005)).

Recently, the Supreme Court in Dura clarified the loss causation pleading and proof requirement in securities fraud cases. Loss causation, as defined by the Supreme Court, is the "causal connection between the material misrepresentation and the loss." Dura, 125 S.Ct. at 1631. The Dura court held that a plaintiff could not satisfy loss causation merely by alleging (and later establishing) that the price of the securities on the date of the purchase was inflated because of misrepresentation. Id. at 1627. The plaintiffs in Dura represented a class of individuals who bought stock in Dura

4

Pharmaceuticals on the public market during the class period. Id. at 1629. The plaintiffs alleged that the company made false statements concerning its profits and prospects for future approval by the FDA of its products before and during the purchase period. Id. at 1630. On the last day of the purchase period, Dura Pharmaceuticals announced that its earnings would be lower than previously expected, principally due to slow drug sales. Id. The following day, the company's shares lost almost half their value, falling from $39 per share to $21 per share. Id. Subsequently, when Dura Pharmaceuticals announced that the FDA would not approve its products, the company's shares temporarily fell but almost fully recovered within one week. Id. With respect to economic loss, the complaint alleged that "[i]n reliance on the integrity of the market, [the plaintiffs]. . . paid artificially inflated prices for Dura securities" and the "plaintiffs suffered 'damage[s]' thereby." Id.

In reversing the Ninth Circuit's jurisprudence on loss causation, the Dura court stated that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss" because the injury does not necessarily occur at the time of the purchase. Id. at 1631-32. For instance, where plaintiffs sold their stock immediately after purchasing it at an inflated price, before the truth was disclosed to the market, the plaintiffs may have suffered no economic loss at all. Id. at 1631. In concluding that plaintiffs did not adequately plead loss causation, the Supreme Court held that, in light of the numerous factors affecting share price an inflated purchase price might suggest that the misrepresentation "touches upon" a later economic loss, but could not be held to have "caused" the economic loss. Id. at 1632.

Although the Supreme Court also noted that its holding did not affect the applicability of Fed.R.Civ.P. 8(a)(2) to loss causation (i.e., its holding did not create a heightened pleading standard for loss causation), the mere allegation that plaintiff class purchased their shares at an artificially inflated price did not serve to place the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 1634 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Even under this test, the complaint failed to "provide the defendant with some indication of the loss and the causal connection that the plaintiff has in mind." Id. at 1634. Specifically, the court found that the complaint (1) failed to claim that Dura's share price fell significantly after the truth became

5

1  known, (2) failed to specify the relevant economic loss, and (3) failed to describe the causal
2  connection between the loss and the misrepresentation. Id. at 1634.

3  In applying the Dura framework, the Ninth Circuit recognized that pleading loss causation is a
4  difficult task. In re Daou Systems, Inc., 411 F.3d 1006, 1014 (9th Cir. 2005). In Daou, the plaintiffs
5  alleged that the defendants systematically and frequently violated the Generally Accepted Accounting
6  Principles ("GAAP") by prematurely recognizing revenue in order to artificially inflate the price of
7  Daou stock. Id. at 1012. The plaintiffs also alleged that had they been informed of Daou's true
8  financial results and condition, they would not have purchased their shares, or at least not at the prices
9  paid. Id. After assessing plaintiffs' complaint, the Daou court found that the complaint adequately pled
10 loss causation because the allegations, if assumed true, were sufficient to provide the defendant "with
11 some indication that the drop in Daou's stock price was causally related to Daou's financial
12 misstatements reflecting its practice of prematurely recognizing revenue before it was earned." Id. at
13 1026. Specifically, the complaint alleged that "beginning in August 1998, defendants revealed that
14 Daou's operating expenses and margins were deteriorating and, on October 28, 1998, defendants
15 revealed that Daou had dramatically missed its projected 3Q98 earnings and would have to report a
16 loss of $0.17 a share." Id. The complaint also alleged that the defendant revealed that "the Company's
17 rapidly escalating work in progress account represented over $10 million in unbilled receivables--*the*
18 *direct result of prematurely recognizing revenue*." Id. (emphasis in the original). The complaint
19 further alleged that prior to the August 13, 1998 disclosure, "[d]efendants failed to disclose the actual
20 figures to analysts to conceal the fact that Daou's operating earnings and margins were deteriorating as
21 a result of prematurely and improperly recognizing revenue." Id. (alteration in the original). The
22 complaint alleged that once the defendants began to reveal figures showing the company's true
23 financial condition, "the result of prematurely recognizing revenue before it was earned, led to a
24 'dramatic, negative effect on the market, causing Daou's stock to decline to $3.25 per share, a
25 staggering 90% drop from the Class Period high of $34.375 and *a $17 per share drop from early*
26 *August 1998*.'" Id. (emphasis in the original). Lastly, the complaint alleged that "Daou's stock price
27 has never recovered and the Company has never been able to match the artificially inflated revenues
28

6

1  reported during the Class Period." Id. The Daou court concluded that the plaintiffs adequately pled
2  loss causation.

3      The Daou court also noted that the plaintiffs were not required to show that the
4  "misrepresentation was the *sole* reason" for the stock's decline in value in order to establish loss
5  causation. Id. at 1025. So long as the misrepresentation is "one substantial cause of the investment's
6  decline in value, other contributing forces will not bar recovery under the loss causation requirement
7  but will play a role in determining recoverable damages." Id. (internal quotations omitted).

8      Defendants in the present case contend that Dura requires the corrective disclosure to directly
9  relate to the putative misstatement. (Mot. at 14-15; Reply at 4-7.) Defendants argue that "plaintiffs in
10 this case have merely alleged that the purported 'disclosures' had a 'negative effect' on Cisco's stock
11 price, rather than the requisite 'corrective effect.'" (Reply at 2:16-18.) Defendants cite In re Initial
12 Public Offering Sec. Litig., No. MDL 1554(SAS), 2005 WL 1162445 (S.D.N.Y. May 6, 2005)
13 (hereinafter "IPO"), a New York district court case, in support of their argument.

14     In IPO, the court stated that, in the Second Circuit, "to establish loss causation, a plaintiff must
15 allege. . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss
16 suffered, i.e., that the misstatement or omission concealed something from the market that, when
17 disclosed, negatively affected the value of the security." Id. at *3 (internal quotations omitted)
18 (emphasis in original). The plaintiffs in that case alleged that the defendants intentionally discounted
19 earnings estimates and issued cautionary statements to excite the market and inflate prices when those
20 estimates were beaten. Id. The IPO court held that the plaintiffs failed to allege loss causation because
21 the defendants' fraudulent scheme was never disclosed to the market. Id.

22     Notably, the Dura decision itself does not define the pleading standard for loss causation. The
23 Dura decision only speaks in terms of the "truth" and "relevant truth." The Dura court noted that its
24 holding did not affect the applicability of Fed.R.Civ.P. 8(a)(2) to loss causation, which requires only
25 a "short and plain statement of the claim showing that the pleader is entitled to relief." Dura, 125 S.Ct.
26 at 1634. The complaint must give the defendant "fair notice of what the plaintiff's claim is and the
27 grounds upon which it rests." Id. In satisfying this pleading standard, the complaint needs to "provide

7

the defendant with *some indication* of the loss and the causal connection that the plaintiff has in mind." Id. at 1634 (emphasis added). Similarly in Daou, the court found that the complaint sufficiently alleged loss causation because the complaint provided the defendant "with *some indication* that the drop in Daou's stock price was causally related to Daou's financial misstatements." Daou, 411 F.3d at 1026 (emphasis added).

### 2. Plaintiffs sufficiently allege loss causation

In assessing the FAC, the Court finds that Plaintiffs have sufficiently alleged loss causation. Plaintiffs allege that Cisco's stock was overvalued during the class period because the Defendants engaged in manipulative conduct, fraudulent course of business, and false statements about Cisco's business. (FAC ¶ 1.) Specifically, Defendants' alleged manipulative conduct and false statements include the following: (i) current and future revenues and earnings; (ii) improper revenue recognition and manipulation of earnings; (iii) undisclosed growth in inventory; (iv) lack of demand for its products; (v) failed acquisition program; and (vi) suspect accounting for Cisco Capital. (FAC ¶ 1.) The FAC further alleges that as a result of Defendants' conduct and statements, Cisco's stock prices were artificially inflated during the Class Period until Defendants began to reveal the "true" business operations of the company between December 2000 through February 2001. (FAC ¶ 24-29, 36). Specifically, Plaintiffs allege that on December 12-13, 2000, Cisco began to reveal the "truth" about its financial condition. In a filing with the SEC, Cisco stated that it had established a $275 million reserve for accounts overvalued or excessive inventories and uncollectible accounts receivables, an amount much larger than Cisco had disclosed. (FAC ¶¶ 25, 87, 126.) On December 15, 2000, Bloomberg publicized Cisco's SEC filing and also disclosed that the $275 million reserve "covers losses in inventories, investments and accounts receivable." (FAC ¶ 87.) As a result of this disclosure, Cisco stock fell from $55-1/4 per share on December 13, 2000 to $35-5/32 per share on December 21, 2000, about a 36% drop. (FAC ¶¶ 25, 87, 125.)

The FAC further alleges that in order to "halt the fall of Cisco stock," Cisco Defendants continued to falsely assure investors and analysts that demand for Cisco's products remained strong and that Cisco would meet the previously-forecasted growth levels for the balance of FY'01 and

8

1  FY'02. (FAC ¶ 25.) This assurance allegedly allowed Cisco's stock to continue to trade at artificially
2  inflated prices. (FAC ¶ 25.)

3  Then on February 6, 2001, when Cisco reported its 2nd Q FY'01 results, Cisco Defendants
4  further disclosed the "truth" about its financial condition and business operations. In Cisco's report,
5  Cisco revealed, <u>inter alia</u>, that (i) its revenues and earnings would fall short of forecasted levels and
6  would decline over the next quarter; (ii) its inventory had grown to over $2.5 billion; (iii) it would
7  impose a hiring freeze; and (iv) it would be cutting back sharply on new financing commitment by
8  Cisco Capital. (FAC ¶ 175.) As a result of this disclosure, Cisco stock fell from $36-3/16 per share
9  on February 6, 2001 to $29-7/8 per share on February 7, 2001, about a 17% drop. (FAC ¶ 175.)

10  Plaintiffs have sufficiently alleged a casual connection between the alleged misrepresentations
11  and the subsequent decline in their stock to survive a motion for judgment on the pleadings under Rule
12  12(c). The FAC alleges that there was a steep drop in the price of Cisco's stock after Cisco
13  Defendants began to disclose the alleged "truth" about its financial condition. <u>See</u> <u>Daou</u>, 411 F .3d at
14  1026. Thus, the FAC provides the defendant with "fair notice of what the plaintiff's claim is and the
15  grounds upon which it rests." <u>Dura</u>, 125 S.Ct. at 1634.

16  Accordingly, Cisco Defendants' Motion for Judgment on the Pleadings is denied.

### V.  CONCLUSION

18  For the foregoing reasons, the Court DENIES Defendants' Motion for Judgment on the
19  Pleadings.

20  Dated: October 26, 2005
   01cv20418jop

   JAMES WARE
21  United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alice L. Jensen ajensen@fenwick.com
Brian J. Robbins robbins@ruflaw.com
Bruce C. Gibney bgibney@hewm.com
Connie Cheung conniec@milberg.com
Daniel C. Girard girardgibbs@girardgibbs.com
Daniel S. Drosman DanD@lerachlaw.com
Daniel T. Rockey drockey@hewm.com
Darren J. Robbins e_file_sd@lerachlaw.com
Dean S. Kristy dkristy@fenwick.com
Eric J. Belfi ebelfi@murrayfrank.com
Ethan Richard York eyork@winston.com
Felix Lee flee@fenwick.com
George E. Barrett gbarrett@barrettjohnston.com
George H. Brown gbrown@hewm.com
James G. Stranch jgs@branstetterlaw.com
Kevin P. Muck kmuck@fenwick.com
Lesley E. Weaver lesleyw@milberg.com
Lionel Z. Glancy info@glancylaw.com
Matthew Paul Montgomery mattm@lerachlaw.com
Michael L. Rugen mrugen@hewm.com
Norman J. Blears nblears@hewm.com
Patrice L. Bishop service@ssbla.com
Robert A. Jigarjian CAND.USCOURTS@CLASSCOUNSEL.COM
Ruth Marian Bond Rbond@hewm.com
Spencer A. Burkholz SpenceB@lerachlaw.com
Stuart L. Berman sberman@sbclasslaw.com
Willem F. Jonckheer wjonckheer@schubert-reed.com
William S. Lerach billl@lerachlaw.com

**Dated: October 26, 2005**                                    **Richard W. Wieking, Clerk**

                                                               **By:    /s/JW Chambers
                                                                        Ronald L. Davis
                                                                        Courtroom Deputy**

10