MICHAEL L. RUGEN (Bar No. 85578)
CAROL LYNN THOMPSON (Bar No. 148079)
NICOLE M. RYAN (Bar No. 175980)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California  94104–2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
michael.rugen@hellerehrman.com
carollynn.thompson@hellerehrman.com
nicole.ryan@hellerehrman.com

NORMAN J. BLEARS (Bar No. 95600)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, California  94025–3506
Telephone: (650) 324-7000
Facsimile: (650) 324-0638
norman.blears@hellerehrman.com

Attorneys for Defendant
PRICEWATERHOUSECOOPERS LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re CISCO SYSTEMS INC. SECURITIES LITIGATION | No. C-01-20418-JW (PVT) |
| | CLASS ACTION |
| | **DEFENDANT PRICEWATERHOUSE– COOPERS LLP'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| This Document Relates To: | |
| ALL ACTIONS | |
| | The Honorable James Ware Date:  September 18, 2006 Time:  3:00 p.m. Courtroom 8, Fourth Floor Trial Date:  October 4, 2006 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................................................1

II.   ARGUMENT............................................................................................................3

      A.    Mr. Regan's Testimony About Pre-Funded Inventory Transactions
            Should Be Excluded Because It Is Not Related To The Accuracy Of The
            Financial Statements Or PwC's Compliance With GAAS. .........................................3

      B.    Mr. Regan's Testimony About Pre-Funded Inventory Transactions And
            Related Party Transactions Should Be Excluded Because Plaintiffs Have
            Not Asserted Any Resulting Damages. ............................................................5

      C.    Mr. Regan's Testimony About PwC's Review Of Unaudited Quarterly
            Financial Statements Should Also Be Excluded As Irrelevant......................................6

      D.    Mr. Regan's Opinion That PwC's Conduct Constituted "An Extreme
            Departure From The Ordinary Standard Of Care Of An Auditor" Should
            Be Excluded. ....................................................................................6

            1.    Mr. Regan's "Extreme Departure" Testimony Lacks The
                  Foundation And Reliability Required By Rule 702.....................................7

            2.    Mr. Regan's "Extreme Departure" Testimony Is A Legal
                  Conclusion Designed To Tell The Jury What Result To Reach. ..........................9

      E.    Mr. Regan Is Not Qualified To Offer Expert Testimony Regarding The
            State Of The High-Technology Or Telecommunications Industries. .....................11

            1.    Mr. Regan Proposes To Offer Expert Testimony About The
                  Condition Of The High-Technology And Telecommunications
                  Industries. ........................................................................11

            2.    Mr. Regan Is Not Qualified To Provide Expert Testimony About
                  The History And Condition Of The High-Technology Or
                  Telecommunications Industries, And His Testimony Lacks A
                  Reliable Foundation. ..............................................................12

III.  CONCLUSION.........................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Berry v. City of Detroit,*
    25 F.3d 1342 (6th Cir. 1994) ............................................................................ 10

*Claar v. Burlington Northern R.R.,*
    29 F.3d 499 (9th Cir. 1994) ............................................................................... 7

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ..................................................................... 3, 7, 8, 9, 12, 15

*DSAM Global Value Fund v. Altris Software, Inc.,*
    288 F.3d 385 (9th Cir. 2002) ............................................................................. 7

*Feldman v. Pioneer Petroleum, Inc.,*
    813 F.2d 296 (10th Cir. 1987) ........................................................................... 5

*Froemming v. Gate City Federal Savs. and Loan Assn.,*
    822 F.2d 723 (8th Cir. 1987) ............................................................................ 13

*Greebel v. FTP Software, Inc.,*
    194 F.3d 185 (1st Cir. 1999) .............................................................................. 8

*Hangarter v. Provident Life & Accident Ins. Co.,*
    373 F.3d 998 (9th Cir. 2004) ............................................................................ 13

*Hardin v. Ski Venture, Inc.,*
    50 F.3d 1291 (4th Cir. 1995) ............................................................................ 13

*Highland Capital Mgmt., L.P. v. Schneider,*
    379 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................... 4

*Hollinger v. Titan Capital Corp.,*
    914 F.2d 1564 (9th Cir. 1990) ........................................................................... 7

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
    277 F.3d 658 (3d Cir. 2002) .............................................................................. 8

*In re Merck & Co. Sec. Litig.,*
    432 F.3d 261 (3d Cir. 2005) .............................................................................. 4

*In re Software Toolworks, Inc. Sec. Litig.,*
    50 F.3d 615 (9th Cir. 1994) ........................................................................... 7, 8

*In re Stratosphere Corp. Sec. Litig.,*
    66 F. Supp. 2d 1182 (D. Nev. 1999) ................................................................ 10

*In re Verifone Sec. Litig.,*
    11 F.3d 865 (9th Cir. 1993) ............................................................................... 4

ii

*In re Worldcom, Inc. Sec. Litig.,*
    352 F. Supp. 2d 472 (S.D.N.Y. 2005) ........................................................................10

*In re Worlds of Wonder Sec. Litig.,*
    35 F.3d 1407 (9th Cir. 1994) ..........................................................................7, 8, 9

*Kumho Tire Co., Ltd v. Carmichael,*
    526 U.S. 137 (1999) ........................................................................................7

*Ralston v. Smith & Nephew Richards, Inc.,*
    275 F.3d 965 (10th Cir. 2001) ..........................................................................12

*Saldana v. Kmart Corp.,*
    260 F.3d 228 (3d Cir. 2001) ............................................................................15

*Scott v. Ross,*
    140 F.3d 1275 (9th Cir. 1998) ..........................................................................13

*Thomas J. Kline, Inc. v. Lorillard, Inc.,*
    878 F.2d 791 (4th Cir. 1989) ............................................................................13

*Thomas v. Newton Int'l Enters.,*
    42 F.3d 1266 (9th Cir. 1994) ............................................................................13

*United States v. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991) ............................................................................10

*United States v. Frazier,*
    387 F.3d 1244 (11th Cir. 2004) ..........................................................................8

*United States v. Hicks,*
    389 F.3d 514 (5th Cir. 2004) ............................................................................13

*United States v. Scop,*
    846 F.2d 135 (2d Cir. 1988) ..........................................................................9, 10

*United States v. Williams,*
    212 F.3d 1305 (D.C. Cir. 2000) ........................................................................13

**Federal Rules**

Fed. R. Evid. 401 ..........................................................................................4

Fed. R. Evid. 402 ........................................................................................5, 6

Fed. R. Evid. 403 ....................................................................................5, 6, 11

Fed. R. Evid. 702 ....................................................................................passim

**Other Sources**

Advisory Committee Notes to Rule 704 ....................................................................9

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on September 18, 2006 at 3:00 p.m. in the Courtroom of the Honorable James Ware, 280 South First Street, San Jose, CA 95113, defendant PricewaterhouseCoopers LLP ("PwC") will and hereby does move for an order pursuant to Federal Rules of Evidence 402, 403, and 702 and the Court's scheduling order of June 9, 2006 excluding certain anticipated testimony by plaintiffs' proffered accounting and auditing expert D. Paul Regan.

PwC seeks an order excluding anticipated testimony by Mr. Regan relating to (1) Cisco's pre-funded inventory transactions and alleged related party transactions, (2) violations of professional standards allegedly committed by PwC during its reviews of Cisco's unaudited quarterly financial statements, (3) legal conclusions regarding whether PwC acted with scienter, and (4) assertions regarding the high-technology or telecommunications industries including internet service providers ("ISPs") and community local exchange carriers ("CLECs") during the class period. This motion is made on the grounds that Mr. Regan's testimony regarding pre-funded inventory transactions, related party transactions, and PwC's review of unaudited financial statements is not relevant to plaintiffs' claims against PwC, that Mr. Regan's testimony regarding scienter lacks foundation and improperly and impermissibly usurps the role of the Court and the jury, that Mr. Regan is not properly qualified to offer expert testimony regarding the high-technology or telecommunications industries, and that his testimony regarding those industries lacks foundation. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities In Support Thereof, the Declaration of Alexander Lyon filed concurrently herewith, the Reply in Support of the Motion, all papers filed in support of the separate motion to exclude expert testimony of D. Paul Regan filed by the Cisco Defendants, which PwC joins, and any other matters that come before the court including oral argument on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs offer accounting and auditing opinions from a professional expert witness, D. Paul Regan, who has never audited a public company remotely comparable to Cisco and has not signed

1    an audit report for a public company since the early 1990s.  Ex. A, Expert Report of D. Paul Regan,

2    CPA, CFE, dated Oct. 17, 2005 ("Regan Report") at 4 & Exhibit A thereto; Ex. B, 2/13/06 Regan

3    Dep. at 31:16-32:7.[1]  Relying on hindsight, Mr. Regan opines that Cisco's fiscal 2000 financial

4    statements (as well as its unaudited quarterly financials for the first, second, and third quarters of

5    fiscal 2000 and the first quarter of fiscal 2001) failed to comply with generally accepted accounting

6    principles ("GAAP"); that PwC's audit of Cisco's fiscal 2000 financial statements failed to comply

7    with generally accepted auditing principles ("GAAS"); and that PwC's review of Cisco's unaudited

8    quarterly financials failed to comply with professional standards.

9         Notwithstanding PwC's criticisms of Mr. Regan's opinions, PwC is not, at this time,

10   seeking to bar him from testifying altogether.  The Court should, however, bar certain testimony by

11   Mr. Regan that is irrelevant to plaintiffs' claims against PwC, that is not based on sufficient facts

12   and data, that constitutes a legal conclusion, or that is outside the scope of Mr. Regan's expertise.

13        First, although Mr. Regan testifies regarding eight areas in which he claims that Cisco's

14   accounting was improper and/or PwC's auditing was deficient, for two of those areas, plaintiffs do

15   not claim there was a material misstatement that caused plaintiffs any damages, rendering Mr.

16   Regan's testimony on those issues irrelevant.  Specifically, plaintiffs have failed to connect the

17   supposed errors in Cisco's accounting for pre-funded inventory ("PFI") transactions to

18   misstatements in the financial statements or insufficiencies in PwC's audit work, the premise of any

19   claim against PwC.  They have also failed to identify any damages resulting from PFI accounting or

20   the non-disclosure of supposed "related party transactions."   The result is an absence of two

21   essential elements of a Section 10(b) claim – a material false statement and damages – that renders

22   Mr. Regan's complaints about these two issues non-actionable and therefore irrelevant.  The non-

23   actionable nature of PwC's quarterly reviews (*see* PwC's Motion for Partial Summary Judgment,

24   Dismissing Claims Based On Unaudited Quarterly Financial Statements) renders Mr. Regan's

25

26        [1] All "Ex." references refer to exhibits to the Declaration of Alexander Lyon in Support of
27   Defendant PricewaterhouseCoopers' Motion to Exclude Expert Testimony of D. Paul Regan filed
     concurrently herewith.

28

testimony on that subject irrelevant for the same reason.

Next, Mr. Regan provides testimony, lacking analysis or support, that embodies the legal standard for deliberate recklessness.  Two months after issuing his initial report in which he claimed to identify a half-dozen auditing errors committed by PwC, Mr. Regan issued a Rebuttal Report in which he branded those errors an "extreme departure from the standard of care of an auditor."  Subsequent discovery has shown that *no analysis* underlies this characterization and that its only purpose is to place into Mr. Regan's mouth the very conclusion that plaintiffs will ask the jury to reach.  Such testimony is impermissible, and the Court should exercise its gatekeeping function under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and its progeny to exclude it from trial.

Finally, despite conceding that he is not an expert in the high-technology or telecommunications industries, Mr. Regan purports to make observations about the history of those industries during the class period.  Mr. Regan's lack of practical experience in those industries and the absence of adequate, relevant data supporting his observations mean that such testimony fails to satisfy either the qualification, reliability, or relevance prongs of Federal Rule of Evidence 702.  Mr. Regan should be precluded from engaging in such speculation before the jury.

## II.   ARGUMENT

### A.   Mr. Regan's Testimony About Pre-Funded Inventory Transactions Should Be Excluded Because It Is Not Related To The Accuracy Of The Financial Statements Or PwC's Compliance With GAAS.

Plaintiffs' claim against PwC is premised on the contention that its audit report on Cisco's fiscal 2000 financial statements was materially false because the financial statements allegedly violated GAAP and because PwC allegedly failed to conduct its audit in accordance with GAAS.  Cisco, of course, has never restated any of its financial statements and so plaintiffs' attempt to prove GAAP violations rests on the testimony of Mr. Regan.

For the most part, Mr. Regan opines that each area of allegedly improper accounting he identifies resulted in an error in Cisco's financial statements and that these errors were "material."  For example, Mr. Regan claims that Cisco's lease reserves were understated as a result of various

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

GAAP violations (Ex. A, Regan Report at 35-41) and that the "financial impact" of these violations was a $147.6 million overstatement of revenue in Cisco's fiscal 2000 financial statements.  *Id.* at 41-43.  Mr. Regan then opines that the various errors in the financial statements that he has quantified – including the $147.6 million overstatement of revenue related to lease reserves – were "quantitatively material" to the fiscal 2000 financial statements when taken together.  *Id.* at 143-45.

For PFI transactions, though, Mr. Regan does not make the same assertions.[2]  He opines that Cisco's accounting treatment of PFI transactions was improper (*id.* at 94) but offers no opinion regarding the "financial impact" of the allegedly improper accounting.  *Id.* at 97.  In fact, while Mr. Regan characterizes the ***total volume*** of Cisco's PFI transactions as material, ***he has no opinion as to whether the errors he identifies were material:***

> [W]e had produced to us…records which indicated how much PFI revenue had been recorded.  But we, we had an inability to determine the PFI revenue which had been recognized earlier than it should.

Ex. C, 2/14/06 Regan Dep. at 336:2-20.  Perhaps for that reason, Mr. Regan also fails to offer any opinion regarding PwC's work on PFI transactions, and does *not* opine that PwC's audit work in this area violated GAAS.  Ex. A, Regan Report at 97-98; Ex. D, Rebuttal Response of D. Paul Regan, CPA, CFE, dated December 15, 2005 ("Regan Rebuttal") at 87.

Without evidence of a false entry in the financial statements or of materiality, plaintiffs' PFI-related allegations fail to state a claim under Section 10(b).  *See, e.g., In re Verifone Sec. Litig.,* 11 F.3d 865, 869-70 (9th Cir. 1993) (affirming dismissal of Section 10(b) claim where plaintiffs failed to identity actionable misstatement or omission); *In re Merck & Co. Sec. Litig.,* 432 F.3d 261, 275-76 (3d Cir. 2005) (affirming dismissal of Section 10(b) claim where non-disclosure of accounting practice was immaterial).  And if plaintiffs' PFI-related allegations fail to state a claim, Mr. Regan's testimony about those allegations is irrelevant.  Fed. R. Evid.  401 (admissible evidence must go to a fact "that is of consequence to the determination of the action"); *Highland*

---

[2] "Pre-funded inventory" or "PFI" refers to transactions in which products are shipped to Cisco customers under a master lease agreement but separate lease schedules specific to the shipped product are not signed until later.

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

*Capital Mgmt., L.P. v. Schneider,* 379 F. Supp. 2d 461, 473 (S.D.N.Y. 2005) (Rule 702 "requires expert testimony to have a valid connection to the pertinent inquiry") (citations omitted).  For PwC, the irrelevance is compounded by the fact that Mr. Regan has no opinion whether PwC's PFI-related work satisfied GAAS.  As a result, in the absence of any evidence that alleged errors in PFI accounting led to a material misstatement in the financial statements or that PwC's audit work in this area violated GAAS, this Court should exclude any testimony by Mr. Regan regarding PFI transactions as irrelevant, unduly prejudicial, and unhelpful to the jury.  Fed. R. Evid. 402, 403, 702.

> **B.     Mr. Regan's Testimony About Pre-Funded Inventory Transactions And Related Party Transactions Should Be Excluded Because Plaintiffs Have Not Asserted Any Resulting Damages.**

According to Mr. Regan, one of the errors in Cisco's financial statements was a failure to disclose certain related party transactions.  *See* Ex. A, Regan Report at 127-32.  But as with the alleged PFI errors, Mr. Regan identifies no impact on Cisco's reported revenues resulting from this supposed error.  Consequently, when Mr. Regan calculates the total overstatement of Cisco's net income for the period Q1 '00 through Q1 '01, he does so without reference to PFI transactions or related party transactions.  *See* Ex. A, Regan Report at 144-45 (chart calculating total adjustments to Cisco's net income as a result of quantified GAAP errors); Ex. D, Regan Rebuttal at Exhibit 12 (revised chart calculating total adjustments to Cisco's net income).

Crucially, Mr. Regan's calculation of net income adjustments is the basis of plaintiffs' claimed damages because plaintiffs' damages expert, Dr. Blaine Nye, uses the net income adjustments to calculate the "inflation" in Cisco's stock and then uses the "inflation" to calculate damages.  Ex. E, Expert Report of Blaine F. Nye, PH.D., dated October 17, 2005 at 41-43 & Exhibit 6 (relying on and reprinting Mr. Regan's chart of net income adjustments).  The result is that plaintiffs' asserted damages are – like Mr. Regan's calculations – in no way based on the alleged errors in Cisco's PFI accounting or related party disclosures.  Without resulting damages, the asserted errors in PFI accounting and related party disclosures are non-actionable.  *See, e.g., Feldman v. Pioneer Petroleum, Inc.,* 813 F.2d 296, 302 (10th Cir. 1987) (affirming dismissal of Section 10(b) claim where plaintiffs failed to present evidence of damages stemming from

1  defendants' fraudulent conduct).  And, as a result, Mr. Regan's testimony on those topics is
2  irrelevant, unduly prejudicial, and inadmissible.  Fed. R. Evid. 402, 403, 702.

3       **C.      Mr. Regan's Testimony About PwC's Review Of Unaudited Quarterly
               Financial Statements Should Also Be Excluded As Irrelevant.**
4

5       As set forth in its motion for summary judgment, PwC issued no opinion and made no
6  public statement in connection with Cisco's quarterly financial statements.  Thus, PwC has no
7  potential Section 10(b) liability for alleged misstatements in Cisco's quarterly financials.  *See*
8  PwC's Motion For Partial Summary Judgment, Dismissing Claims Based On Unaudited Quarterly
9  Financial Statements (filed Mar. 13, 2006, Docket No. 461).  Because PwC's liability cannot be
10 premised on its review of Cisco's unaudited quarterly financial statements, Mr. Regan's criticisms
11 of PwC's work during those reviews are irrelevant, unduly prejudicial, and fail to assist the trier of
12 fact, and are therefore inadmissible.  Fed. R. Evid. 402, 403, 702.

13      **D.      Mr. Regan's Opinion That PwC's Conduct Constituted "An Extreme
               Departure From The Ordinary Standard Of Care Of An Auditor" Should Be
14             Excluded.**

15      In his December 15, 2005 Rebuttal Response, Mr. Regan offered the following one-sentence
16 "Additional Opinion:"

17      In my opinion, PWC's numerous GAAS violations constitute an extreme departure
        from the ordinary standard of care of an auditor.
18
   Ex. D, Regan Rebuttal at 4.
19
        No such opinion was included in Mr. Regan's first report issued in October 2005, and at
20
   deposition, Mr. Regan conceded that he had performed no further work to reach this conclusion.
21
   Ex. C, 2/14/06 Regan Dep. at 481:4-13, 483:1-9.  He was also unable to identify any particular
22
   aspect of PwC's work that he believes was an "extreme" departure, and when pressed to do so, he
23
   fell back on the half-dozen or so alleged GAAS violations identified in his initial report, stating
24
   simply that those violations, taken together, represented the "extreme departure."  *Id.* at 483:10-20.
25
        If the substance behind Mr. Regan's opinion was difficult to discern, the rationale for
26
   offering it was not.  Mr. Regan readily acknowledged that the phrase "extreme departure from the
27
   ordinary standard of care" is a legal term that "goes to whether or not and the extent to which PWC
28

6
DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

is liable." *Id.* at 482:6-25.  This is an understatement.  As it happens, Mr. Regan's Additional

Opinion precisely tracks a portion of the Ninth Circuit's definition of "deliberate recklessness" –

the minimum state of mind necessary to prove scienter:

> Recklessness is: a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but ***an extreme departure from the standards of ordinary care***, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385, 389 (9th Cir. 2002) (quoting

*Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569 (9th Cir. 1990)) (emphasis added).[3]  Mr.

Regan acknowledged that he added his "Additional Opinion" to his testimony at the request of

plaintiffs' counsel.  Ex. C, 2/14/06 Regan Dep. at 480:15-481:3.

### 1.  Mr. Regan's "Extreme Departure" Testimony Lacks The Foundation And Reliability Required By Rule 702.

The first flaw in Mr. Regan's "Additional Opinion" is one of substance.  To be admissible,

expert testimony must be both reliable and relevant.  *Daubert v. Merrell Dow Pharm., Inc.,* 509

U.S. 579, 592-93 (1993) (trial judge must ensure that expert testimony is both relevant and

reliable); Fed. R. Evid. 702 (expert opinion must be "the product of reliable principles and methods

. . . [applied] reliably to the facts of the case").  This means that the reasoning or methodology

underlying the testimony must be valid and that the reasoning or methodology can be, and has been,

properly be applied to the facts.  *Claar v. Burlington Northern R.R.,* 29 F.3d 499, 501 (9th Cir.

1994) (emphases and quotations omitted).  These rules apply not only to the opinions of "scientific"

experts, but to the opinions of all experts, *Kumho Tire Co., Ltd v. Carmichael,* 526 U.S. 137, 148-

---

[3] The Ninth Circuit has repeatedly cited this standard in defining scienter for purposes of Section 10(b) claims.  *See also In re Software Toolworks Inc. Sec. Litig.,* 50 F.3d 615, 626 (9th Cir. 1994); *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426 (9th Cir. 1994).  Mr. Regan's testimony is particularly misleading to the jury here because while it quotes a portion of the relevant standard, it also leaves out a significant part.  Whereas Mr. Regan opines that PwC's conduct "constitute[d] an extreme departure from the ordinary standard of care of an auditor," the necessary legal standard is that the auditor's conduct must present '*such* 'an extreme departure' from reasonable accounting practice ***that it 'knew or had to have known' that its conclusions would mislead investors***."  *Worlds of Wonder*, 35 F.3d at 1426 (quoting *Hollinger*, 914 F.2d at 1569) (emphases added).

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

49 (1999), and it is the proponent's burden to establish that all of the relevant requirements are satisfied. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004). These rules give life to Rule 702's command that expert testimony be admitted only where it "assist[s] the trier or fact."

Mr. Regan's "Additional Opinion" utterly fails the substantive analysis required by Rule 702 and *Daubert.* A finding of scienter against an auditor requires more than just the type of alleged GAAP and GAAS violations identified by Mr. Regan in his review of PwC's work. *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426 (9th Cir. 1994) ("[t]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."); *In re Software Toolworks Inc.,* 50 F.3d 615, 627-28 (9th Cir. 1994) (same). Indeed, while such standards violations may be enough to show negligence on the auditor's part, this does not mean they will suffice to prove scienter. *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 199 (1st Cir. 1999) (stating that the difference between recklessness and ordinary negligence is "not just a difference in degree, but also in kind") (citation omitted). For that reason, "the discovery of discrete errors after subjecting an audit to piercing scrutiny post-hoc does not, standing alone, support a finding of intentional deceit or of recklessness." *In re Ikon Office Solutions, Inc., Sec. Litig.,* 277 F.3d 658, 673 (3d Cir. 2002) (citing *Software Toolworks*). Instead, the plaintiff must prove that "the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *Worlds of Wonder*, 35 F.3d at 1426 (citation omitted).

Here, Mr. Regan has done exactly what the case law indicates is insufficient: he has taken a half-dozen alleged GAAS violations by PwC and declared that they add up to the Ninth Circuit's definition of deliberate recklessness. Moreover, he has done this without undertaking one iota of analysis and without offering any explanation for how he reached this conclusion. The process of auditing Cisco's financial statements was, by all accounts, a mammoth undertaking. Mr. Regan concedes that he did not undertake to audit Cisco's financial statements. Ex. C, 2/14/06 Regan Dep. at 480:4-14. He also did not attempt to document and catalog all of the hundreds of auditing procedures that PwC conducted that are not challenged by plaintiffs. Against this background, it

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

1   would be difficult for Mr. Regan to explain why the half-dozen alleged GAAS violations he has

2   identified add up to such an "extreme departure" from auditing standards that PwC "knew or had to

3   have known that its conclusions would mislead investors."  *Worlds of Wonder*, 35 F.3d at 1426

4   (internal quotation omitted).  Indeed, Mr. Regan has already conceded that PwC did *not* know of

5   the alleged misstatements in Cisco's financial statements.  Ex. C, 2/14/06 Regan Dep. at 483:25-

6   484:7.

7          Whatever the reason, Mr. Regan has conducted no analysis and created no foundation for an

8   opinion that PwC's conduct constituted an "extreme departure" from accounting standards.  As a

9   result, it is impossible for plaintiffs to carry their burden under Rule 702 of showing that such

10  testimony is sufficiently reliable under *Daubert* or that it would assist the jury in understanding any

11  relevant issue in the case, and the testimony should therefore be excluded.

12              **2.      Mr. Regan's "Extreme Departure" Testimony Is A Legal Conclusion
                          Designed To Tell The Jury What Result To Reach.**
13

14         Of course, the true purpose of Mr. Regan's "Additional Opinion" is not to assist the jurors

15  but to tell them what to think, and this is the testimony's second – but equally fatal – flaw.  While

16  Rule 704 permits expert testimony to "embrace" an ultimate issue to be decided by jury, it "was not

17  intended to allow experts to offer opinions embodying legal conclusions."  *United States v. Scop*,

18  846 F.2d 135, 139 (2d Cir. 1988).  Consequently, where an expert's proposed testimony attempts to

19  define legal terms or merely tell the jury how to apply the facts to the relevant legal standard, Rules

20  403 and 702 render such testimony inadmissible, notwithstanding Rule 704.  *See* Advisory

21  Committee Notes to Rule 704 (observing that Rules 403, 701, and 702 "afford ample assurances

22  against the admission of opinions which would merely tell the jury what result to reach….").

23         *Scop* illustrates this limitation on expert testimony in the context of a Section 10(b) claim.

24  The defendants in *Scop* were charged with criminal violations of various securities laws, including

25  Section 10(b).  846 F.2d at 136.  In support of its case, the government called an expert witness who

26  testified,

27          It is my opinion that the stock of European Auto Classics was manipulated and that
            certain individuals were active participants and material participants in the
28

9

1  manipulation of that stock.  And that these individuals engaged in a manipulative
2  and fraudulent scheme in furtherance of that manipulation.

*Id.* at 138.  The expert used a similar formulation throughout his testimony, repeatedly describing

the defendants as "active participants" and "material participants" in manipulation of the

company's stock.  *Id.*

The court held that the expert's "repeated statements embodying legal conclusions exceeded

the permissible scope of opinion testimony under the Federal Rules of Evidence."  *Id.* at 139.

Although the expert's testimony could encompass an ultimate issue in the case, by couching his

testimony in terms drawn from the applicable statutes, the expert had given "legal conclusions that

were highly prejudicial and went well beyond his province as an expert in securities trading" and

that could not have been helpful to the jury.  *Id.* at 140.  As a result, the court held that the expert's

opinion did not meet the requirements of Rule 403 or 702 and should have been excluded.  *Id.* at

143 (overturning convictions for violation of Section 10(b)); *see also In re Stratosphere Corp. Sec.

Litig.,* 66 F. Supp. 2d 1182, 1191 n.2 (D. Nev. 1999) (striking as a legal conclusion expert

testimony purporting to conclude whether statements in prospectus were "forward-looking" for

purposes of the PSLRA's safe harbor provision); *Berry v. City of Detroit,* 25 F.3d 1342, 1353-54

(6th Cir. 1994) (holding that expert should not have been permitted to characterize defendants'

conduct as "deliberate indifference" where that was language of controlling standard); *In re

Worldcom, Inc. Sec. Litig.,* 352 F. Supp. 2d 472, 500 n.34 (S.D.N.Y. 2005) (experts "should avoid

using in their testimony the very words and phrases that constitute the elements of a claim that a

jury must find"); *United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991) (the use of

expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the

role of the trial judge in instructing the jury as to the applicable law or the role of the jury in

applying that law to the facts before it").

Again, Mr. Regan's "Additional Opinion" seeks to do what the case law prohibits by

applying the facts to the relevant legal standard and giving that application the veneer of expert

authority.  Like the expert in *Scop* who told the jury that the defendants were active participants in a

manipulative scheme, Mr. Regan proposes to tell the jury that PwC was deliberately reckless and,

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

1   therefore, issued a materially misleading statement with scienter.  This testimony is improper,

2   unduly prejudicial to PwC, and fails to assist the jury in understanding the relevant issues in this

3   case; as a result, it should be excluded under Rules 403 and 702.

4         **E.**     **Mr. Regan Is Not Qualified To Offer Expert Testimony Regarding The State Of The High-Technology Or Telecommunications Industries.**

5

6         **1.**     **Mr. Regan Proposes To Offer Expert Testimony About The Condition Of The High-Technology And Telecommunications Industries.**

7        Mr. Regan's opinions regarding the accuracy of Cisco's financial statements and the quality

8   of PwC's work revolve around GAAP and GAAS, subjects on which Mr. Regan purports to be an

9   expert.  Ex. A, Regan Report at 4.  However, three of Mr. Regan's complaints about Cisco's

10  financial statements and PwC's work rest in part on assertions he makes about the state of the high-

11  technology and telecommunications industries, including competitive local exchange carriers

12  ("CLECs") and internet service providers ("ISPs"), during the class period.  Mr. Regan's

13  commentary on industry conditions is inadmissible because it is beyond his expertise and because it

14  lacks a reliable foundation.

15       **Lease Reserves:**  In the section of his report discussing Cisco's lease reserves, Mr. Regan

16  asserts that the CLEC sector "was undergoing significant economic stress," that "the Internet

17  service provider (ISP) sector experienced serious financial problems," and that both "reflected the

18  downturn in the high technology industries generally."  Ex. A, Regan Report at 31.  Based on these

19  assertions, Mr. Regan then criticizes Cisco for not monitoring the "changing economic

20  circumstances of these segments" and criticizes PwC for accepting Cisco's characterization of

21  CLECs as companies with strong credit when "many CLECs were severely troubled and failing

22  during calendar year 2000."  *Id.* at 36, 45.

23       **Excess Inventory Reserve:**  On the issue of Cisco's excess inventory reserve, Mr. Regan

24  criticizes PwC for concluding that Cisco's inventory reserve rate was reasonable despite alleged

25  contradictory evidence including "adverse economic conditions in [Cisco's] industry."  *Id.* at 136.

26       **Working Capital Loans:**  Mr. Regan opines that Cisco made working capital loans "to

27  financially unstable companies while not establishing adequate reserves as required by GAAP

28  during a time when the CLEC and ISP industry was declining."  Ex. D, Regan Rebuttal at 110.

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

1    Mr. Regan does not connect his assertions about industry conditions to professional

2  accounting or auditing standards, his area of purported expertise.  Indeed, he does not contend that

3  PwC violated any obligation to research the high-technology or telecommunications markets or

4  review any particular publications as part of its audit, much less cite a single provision of GAAS or

5  professional literature in support of such a proposition.

6    Mr. Regan also fails to connect his assertions about the high-technology and

7  telecommunications markets to the supposed subject of his testimony, what PwC should have done

8  while conducting its audit during the period August 1999 to August 2000.  On the contrary, his

9  commentary on the state of the high-technology and telecommunications industries is based on

10  news articles from February and June 2001 and an AICPA bulletin about the high-technology

11  market published in "late 2000," all of which post-date PwC's August 8, 2000 audit opinion.  Ex.

12  A, Regan Report at 31 and nn. 59-61.

13    In short, Mr. Regan's observations about the high-technology and telecommunications

14  industries are not part of his accounting testimony but separate expert testimony about that much-

15  discussed era of economic history.  This is underscored by the fact that Mr. Regan purports to rebut

16  the opinions of Jeffrey P. Williams, an industry expert whose testimony about the business and

17  investment climate facing CLECs and ISPs during 2000 has nothing to do with accounting

18  standards.[4]  Ex. D, Regan Rebuttal at 8-16.

19        **2.    Mr. Regan Is Not Qualified To Provide Expert Testimony About The
             History And Condition Of The High-Technology Or
20           Telecommunications Industries, And His Testimony Lacks A Reliable
             Foundation.**
21

22    The Court's gatekeeping function under Rule 702 and *Daubert* is a two-step process in

23  which the Court assesses the qualifications of the proffered expert and the reliability of his

24  proposed testimony.  *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 969 (10th Cir.

25  2001).  The federal rules permit an expert to be qualified by "knowledge, skill, experience, training,

26    _____

27    [4] Mr. Williams is a financial advisor to telecommunications and technology companies and
     was retained by PwC to provide expert testimony regarding the history of those industries.

28

12

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

1  or education" and generally contemplate a "broad conception" of qualification.  Fed. R. Evid. 702;

2  *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1015 (9th Cir. 2004).  However,

3  this does not mean that passing or anecdotal experience with a topic permits a witness to offer

4  expert testimony on that topic.  *See, e.g., United States v. Williams,* 212 F.3d 1305, 1309 (D.C. Cir.

5  2000) (police officer who had conducted fewer than a dozen arrests involving possession of a

6  firearm was not qualified as an expert for purpose of testifying that it is common for people who

7  use drugs to carry weapons); *Froemming v. Gate City Federal Savs. and Loan Assn.,* 822 F.2d 723,

8  732 (8th Cir. 1987) (witness was not qualified as an expert regarding value of shopping centers

9  where his only experience came from one shopping mall syndication that was ongoing at the time

10  of trial).

11         An expert witness must be sufficiently qualified that his testimony will assist the trier of

12  fact's understanding of the case.  *United States v. Hicks,* 389 F.3d 514, 524 (5th Cir. 2004).  As a

13  result, a witness whose qualification as an expert is based on "experience" should have substantial

14  experience.  *See, e.g., Thomas v. Newton Int'l Enters.,* 42 F.3d 1266, 1269-70 (9th Cir. 1994)

15  (finding expert qualified to testify about ship safety practices based on 29 years' experience in

16  longshore work); *Scott v. Ross,* 140 F.3d 1275, 1286 (9th Cir. 1998) (finding sociology professor

17  qualified as expert on deprogramming and anti-cult movement where he had studied and written

18  about topic for 19 years).  Moreover, the experience necessary to qualify as an expert must be

19  practical experience, and one cannot become an expert on a topic merely by testifying about it.  *See,*

20  *e.g., Hardin v. Ski Venture, Inc.,* 50 F.3d 1291, 1296 (4th Cir. 1995) (witness was not qualified to

21  offer expert opinion regarding ski accident by virtue of "experience" testifying in other ski accident

22  cases); *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 800 (4th Cir. 1989) ("it would be

23  absurd to conclude that one can become an expert simply by accumulating experience in

24  testifying").

25         Measured against these standards, it is plain that Mr. Regan lacks the necessary experience

26  to offer expert testimony regarding the state of the high-technology or telecommunications

27  industries.  ***Indeed, Mr. Regan concedes that he is not an expert in the telecommunications, ISP,***

28  ***or CLEC industries.***  Ex. C, 2/14/06 Regan Dep. at 256:7-12, 264:10-15.  Mr. Regan did not even

13

1   audit any high-technology companies during the relevant time period.  Ex. B, 2/13/06 Regan Dep.

2   at 30:17-31:19.  He claims to have acquired "some knowledge" about the industry as a result of

3   prior litigation involving the failed Nortel-Verizon merger in which, according to Mr. Regan, he

4   studied the DLEC/CLEC/ISP marketplace and opined about revenues and expenses of CLECs and

5   ISPs in 1999 and 2000.  Ex. C, 2/14/06 Regan Dep. at 264:10-21, 266:15-24.  However, as

6   discussed above, prior expert testimony does not constitute "experience" for the purpose of Rule

7   702, and even if it did, the single case cited by Mr. Regan is qualitatively and quantitatively

8   insufficient to permit a finding that he is an "expert" regarding the history and condition of the

9   high-technology or telecommunications industries.  Given his background, it is unthinkable that Mr.

10  Regan's assertions about the high-technology and telecommunications industries could possibly

11  assist the trier of fact.

12        Mr. Regan's lack of expertise in the area of the ISP and CLEC markets was implicitly

13  confirmed by plaintiffs' decision to retain Dr. Joseph S. Kraemer as a "telecommunications expert"

14  for the express purpose of rebutting reports by Jeffrey Williams and James Vander Weide, industry

15  experts retained by PwC and Cisco, respectively, to discuss the status of the CLEC and ISP sectors.

16  Ex. F, Expert Report of Dr. Joseph S. Kraemer, dated January 11, 2006, at 4.  Plaintiffs would not

17  have bothered retaining Dr. Kraemer if they believed that Mr. Regan had the expertise to offer the

18  same testimony.  Moreover, although Mr. Regan purports to rebut Mr. Williams' conclusions at

19  length, the substance of his rebuttal opinions is admittedly based on information "included in Mr.

20  Kraemer's report." Ex. D, Regan Rebuttal at 11-12.

21        Mr. Regan's industry testimony also lacks the requisite reliability and relevance.  The one

22  instance of prior testimony identified by Mr. Regan in his deposition and the four publications from

23  "late 2000," February 2001, and June 2001 cited in his report as support for his opinion do not

24  constitute the "sufficient facts and data" demanded by Rule 702.[5]  In addition, the fact that Mr.

25

26        [5] Similarly, in his rebuttal opinion, Mr. Regan relies extensively upon events that were
27  occurred or were disclosed in the fall of 2000 with respect to CLECs and ISPs to bolster his
    purported challenge to Mr. Williams' opinions.  See Ex. D, Regan Rebuttal at 9-12.

28

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

1  Regan's meager sources post-date PwC's August 8, 2000 audit opinion – and that Dr. Kraemer,

2  who claims to have been a consultant in the telecommunications and high-technology industries

3  since 1975, failed to identify any industry-observer who foresaw a downturn in those markets

4  before October 2000[6] – demonstrates that Mr. Regan's hindsight comments about those industries

5  are irrelevant to the issue of PwC's (or Cisco's) contemporaneous conduct.  This is hardly the "fit"

6  required by *Daubert* and Rule 702.  *Saldana v. Kmart Corp.,* 260 F.3d 228, 232-33 (3d Cir. 2001).

7          Although Mr. Regan admits that he is not an expert in the high-technology or

8  telecommunications industries or in the ISP and CLEC sectors, he has offered opinions on the

9  history and condition of those industries during the class period and may attempt to do so at trial.

10  Given his lack of relevant qualifications, the insufficient facts and data supporting his testimony,

11  and its demonstrable irrelevance to plaintiffs' claims, the Court should preclude Mr. Regan from

12  offering such testimony.

13  **III.    CONCLUSION**

14          For the foregoing reasons, PwC respectfully requests that the Court preclude Mr. Regan

15  from

16          (1) Testifying about pre-funded inventory transactions;

17          (2) Testifying about related-party transactions;

18          (3) Testifying about alleged inadequacies in PwC's review of Cisco's unaudited quarterly

19  financial statements;

20          (4) Testifying that PwC's conduct constituted an "extreme departure from the ordinary

21  standard of care of an auditor"; and

22          (5) Offering testimony regarding the state of the high-technology or telecommunications

23  industries, including the ISP and CLEC sectors.

24

25

26  _____

27          [6] *See* PwC's Motion to Exclude Expert Testimony of Joseph Kraemer, filed concurrently
herewith, at 2-4.

28

DEF. PWC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN
CASE NO. C-01-20418-JW

1

2     DATED:  July 7, 2006                    Respectfully submitted,

3                                             HELLER EHRMAN LLP

4                                             By: /s/ _____
5                                                      Michael L. Rugen

6                                             Attorneys for Defendant
                                              PRICEWATERHOUSECOOPERS LLP
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16