LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH (68581)
SPENCER A. BURKHOLZ (147029)
DANIEL S. DROSMAN (200643)
JONAH H. GOLDSTEIN (193777)
MATTHEW P. MONTGOMERY (180196)
JESSICA T. SHINNEFIELD (234432)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
BillL@lerachlaw.com
SpenceB@lerachlaw.com
DanD@lerachlaw.com
JonahG@lerachlaw.com
MattM@lerachlaw.com
JessicaS@lerachlaw.com
     – and –
PATRICK J. COUGHLIN (111070)
LESLEY E. WEAVER (191305)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
PatC@lerachlaw.com
LesleyW@lerachlaw.com

LEVIN, PAPANTONIO, THOMAS, MITCHELL,
  ECHSNER & PROCTOR, P.A.
TIMOTHY M. O'BRIEN (pro hac vice)
316 South Baylen Street, Suite 600
Pensacola, FL 32501
Telephone: 850/435-7000
850/497-7057 (fax)

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re CISCO SYSTEMS, INC. SECURITIES LITIGATION | Master File No. C-01-20418-JW(PVT) |
| | CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | DECLARATION OF BLAINE F. NYE IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS; AND LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| | DATE: December 5, 2006<br>TIME: 9:00 a.m.<br>CTRM: The Honorable James Ware |

I, Blaine F. Nye, declare and state as follows:

## INTRODUCTION

1. I submit this declaration to set forth the bases for the expenses incurred by Lead Counsel for the work performed by Stanford Consulting Group, Inc. ("SCG") in connection with the *Cisco* securities litigation. SCG's work in connection with the *Cisco* litigation was performed under the direct supervision of Lead Counsel, and was performed on an assignment basis. These services were provided under my supervision and by other SCG employees during 2005-2006.

2. The purpose of this declaration is to summarize my professional qualifications, as well as the services rendered by SCG in connection with the *Cisco* litigation.

## QUALIFICATIONS

3. I am the president of SCG, with offices at 702 Marshall Street, Suite 200, Redwood City, CA 94063. SCG provides research and consulting services relating to financial economics to various clients, including government agencies, corporations and law firms.

4. I have served as a consultant and/or expert in the areas of market efficiency, materiality, causation and damages in a number of securities fraud actions.

5. I am the principal individual at SCG who performed work in connection with the *Cisco* litigation engagement. In addition, I supervised other employees at SCG who worked on this assignment. In preparing various materials and in performing research, I was assisted in my efforts by Jane Nettesheim, Brian Dragun and Bernadette Burns, as well as other associates of SCG.

6. I received a B.A. degree in physics from Stanford University, an M.S. degree in physics from the University of Washington, an M.B.A. degree from Stanford University and a Ph.D. in finance from Stanford University.

7. A summary of my qualifications is attached to this declaration as Exhibit A.

## DESCRIPTION OF SERVICES RENDERED

8. SCG was retained by Lead Counsel to research, analyze and provide testimony on issues relating to materiality, causation, market efficiency and the damages suffered by purchasers of Cisco common stock from November 10, 1999 to February 6, 2001 (the "Class Period").

9. The work performed by SCG involved an extensive review of financial and other documents provided to, or obtained by, SCG as well as interviews and consultations with plaintiffs' counsel.

10. The documents reviewed by SCG that specifically relate to this litigation include:

(a) the Complaints filed in this matter;

(b) reports and analyses by plaintiffs' accounting expert D. Paul Regan;

(c) numerous internal Cisco documents relating to Cisco's financial condition;

(d) various third party documents obtained through the discovery process relating to Cisco and its financial condition; and

(e) severalbriefs and the Court orders relating to class certification and loss causation.

11. Additional documents and information reviewed by SCG in the course of this litigation include:

(a) publicly-available documents filed by Cisco with the Securities and Exchange Commission ("SEC");

(b) various press releases by Cisco;

(c) contemporaneous news articles relating to Cisco, as well as other similar companies in the technology industry;

(d) transcripts of Cisco conference calls with securities analysts who followed Cisco;

(e) scores of analyst reports on Cisco and other similar companies in the technology industry issued before, during and after the Class Period;

(f) price and volume information relating to the reported activity in Cisco common stock;

(g) stock price data for various other companies in the same industry as Cisco;

(h) market and industry indices;

(i) NYSE/AmEx/Nasdaq composite index data;

(j) market maker information relating to activity in Cisco's stock;

(k) data regarding short interest positions held in Cisco stock;

(l) database of intra-day trading in Cisco stock;

(m) summary of analyst estimates for Cisco stock; and

(n) summary of Nasdaq markets and statistics.

12. A key issue underlying damages in this matter was the allegedly false and misleading information about Cisco that was publicly available during the Class Period, which inflated Cisco's stock price. Consequently, my staff and I located and reviewed hundreds of articles, press releases, analyst reports, public filings, industry publications and trade journals, as well as other information relating to Cisco and to the technology industry in which Cisco competed. Many hours were spent locating, gathering, reading, analyzing and summarizing this considerable amount of material. These documents were necessary in order to provide SCG with an understanding of the publicly-available information on the various issues relating to Cisco's alleged fraud. It was important for SCG, in performing the damage analysis, to determine what information relating to the alleged fraud was known to the public and what information was unknown. In addition, these documents provided SCG with a thorough understanding of the numerous factors that were affecting Cisco, the market for its stock, as well as Cisco's competitors in the technology industry.

13. SCG conducted numerous computerized literature searches utilizing several on-line database services to ensure the completeness of the documents reviewed, including:

(a) Fact SET Research Systems, Inc.;

(b) Factiva;

(c) First Call;

(d) Investext;

(e) Bloomberg; and

(f) CRSP.

14. Much of the information on Cisco was condensed into a chronologically arranged report that was used in connection with the development of various analyses based on the price movements of Cisco common stock on and around days that contained substantive, relevant public announcements. Of great importance was February 6, 2001, when Cisco reported disappointing

DECLARATION OF BLAINE F. NYE - C-01-20418-JW(PVT) - 3 -

earnings, and revised future guidance, revealing the problems plaintiffs allege should have been disclosed at an earlier time. Based on the price movements of Cisco common stock, SCG created a chronology report that allowed plaintiffs to determine whether particular false statements and disclosures were material. Considerable time and effort went into the development of this analysis to ensure its accuracy.

15. An important element of SCG's review of the relevant, publicly-available information was to obtain and examine hundreds of analyst reports, Cisco's conference calls and analysts' quarterly and annual earnings estimates for Cisco. This information was used to create a spreadsheet showing the changes in earnings expectations after Cisco's February 6, 2001 disclosure of the fraud. Furthermore, the analyst reports were reviewed to gain an understanding of what information was publicly available regarding Cisco's alleged misstatements relating to sales of its products and financial statement improprieties.

16. Daily price and volume data for Cisco common stock, as well as for the stocks of other companies in a comparable industry index, were analyzed on a daily and weekly basis. An industry weighted index based on companies comparable to Cisco was also created for comparison purposes. The relationships between Cisco's stock price, the prices of other comparable companies' stocks, industry indices and financial indices were graphically analyzed. These analyses were used, in part, to determine the degree to which Cisco's stock price movements could be explained by the industry and market forces.

17. SCG performed a computer analysis of institutional investor trading of Cisco common stock by institutional shareholders as reported in quarterly 13-F filings with the SEC and published by Thomson Financial. Quarterly data on the holdings of institutional investors, including, but not limited to, banks, insurance companies and mutual funds, was obtained, organized and analyzed in a database. This analysis was used to determine the institutional holding, sales and retention patterns of Cisco common stock during the Class Period.

18. SCG determined the total number of shares which were available to be publicly traded during each day of the Class Period. To arrive at the number of shares available to trade, Cisco's reported shares issued and outstanding were increased by acquisitions and exercised options

DECLARATION OF BLAINE F. NYE - C-01-20418-JW(PVT) - 4 -

and reduced by amounts held by reporting officers, directors, and affiliates of Cisco. Shares held continuously by reporting institutions from the beginning of the Class Period through the end of the Class Period were withheld from the calculation of damages. In addition, an estimate was made of shares held continuously by non-institutions, which were withheld from the calculation of damages. Reported monthly net increases in short interest in Cisco stock, pro-rated by daily volume, were added to retained shares in the trading model. Similarly, reported monthly net decreases in short interest were subtracted proportionately from retained shares in the trading model. The analysis above, combined with the daily trading volume, formed the foundation for SCG's calculation of the trading pattern in Cisco common stock during the Class Period.

19. At the request of Lead Counsel, SCG analyzed the damages suffered by members of the Class who purchased Cisco common stock during the Class Period and who held Cisco stock at the time Cisco made its February 6, 2001 announcement reporting disappointing earnings and revised future guidance. This analysis was performed by building a daily value line based upon plaintiffs' allegations. The value line represents the price at which Cisco common stock would have traded absent the alleged fraud. SCG then calculated the inflation per share (the difference between the daily price of the stock and the value of the stock) to purchasers of the common stock during the Class Period. The inflation per share, sometimes referred to as damages per share, represents the amount by which class members overpaid for Cisco's common stock during the Class Period.

20. To estimate the amount of aggregate damages suffered by the class members, SCG employed a computer trading program. This computer trading program estimated the trading and retention patterns of Cisco common stock based on reported trading volume, insider transactions, changes in short interest and institutional ownership. No damages were calculated for these intra-day trades. The premise of the computer model used by SCG is that shares bought on any particular day are acquired, with equal proportionality, from shareholders who purchased on prior days.

21. Using the inflation per share and the trading and retention patterns, the computer trading program calculated the aggregate damages caused by the alleged fraud. SCG provided Lead Counsel with several preliminary calculations of damages that were determined to relate to plaintiffs' allegations. Considerable time and effort were expended checking the accuracy and

DECLARATION OF BLAINE F. NYE - C-01-20418-JW(PVT)                                                                 - 5 -

1  completeness of this data. Damages were also estimated for the Lead Plaintiffs who owned Cisco
2  common stock during the Class Period.

3    22. Reported Nasdaq trading volume was reduced by 66% in consideration of market-
4  maker and other intra-day activity, so that the data on daily trading volume input to the model is 34%
5  of reported daily volume of trading in Cisco stock.

6    23. Analysts at SCG checked and reviewed the core data upon which SCG's damage
7  analyses were based. Documents were formulated and created to assist Lead Counsel in their
8  preparation, and charts were created by SCG to highlight specific events during the Class Period.
9  Much review and research was performed to ensure that my opinions were justifiable and that
10 statistics referred to, and/or utilized by me and by other members of SCG, in my analysis were
11 factually correct.

12    24. The price decline in Cisco common stock described above formed the basis for SCG's
13 final damage analysis.

14    25. During the period of my assignment, I met several times with Lead Counsel to
15 discuss my assignment and my deposition. I also traveled to San Francisco to provide expert
16 testimony in a one-and-a-half-day deposition. Finally, I reviewed my deposition transcript for
17 accuracy and made necessary corrections.

## FEES AND EXPENSES

19    26. Pursuant to a non-contingent engagement by plaintiffs' counsel, my firm expended
20 1,187.0 hours of time. This figure includes the hours that I worked, the hours worked by Jane
21 Nettesheim, Brian Dragun and Bernadette Burns, and the time invested by many other members of
22 the SCG staff, including research, computer and support personnel. The fee for the services
23 rendered by me and my firm aggregated $489,969. Plaintiffs' counsel has paid my fees and
24 expenses related to this matter.

1      27.    Attached hereto as Exhibit B is a summary further detailing the total fees and expenses totaling $489,969.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13th day of November, 2006, at Redwood City, California.

                                                                 *[signature]*
                                                                 BLAINE F. NYE

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/Spencer A. Burkholz
SPENCER A. BURKHOLZ

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail: SpenceB@lerachlaw.com

# Mailing Information for a Case 5:01-cv-20418-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **George E. Barrett**
  gbarrett@barrettjohnston.com
- **Eric J. Belfi**
  ebelfi@labaton.com ElectronicCaseFiling@labaton.com
- **Stuart L. Berman**
  sberman@sbclasslaw.com
- **Ronald S Betman**
  rbetman@winston.com
- **Patrice L. Bishop**
  service@ssbla.com
- **Norman J. Blears**
  nblears@hewm.com susan.griffin-preston@hellerehrman.com;yvonne.somek@hellerehrman.com;victor.gonzales@hellerehrman.com
- **Ruth Marian Bond, Esq**
  ruth.bond@sfgov.org blanca.martin@sfgov.org
- **Jennifer Corinne Bretan**
  jbretan@fenwick.com
- **George H. Brown**
  gbrown@hewm.com nsims@hewm.com;rsazegari@hewm.com
- **Spencer A. Burkholz**
  SpenceB@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com
- **Connie M. Cheung**
  conniec@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com;KiyokoH@lerachlaw.com
- **James Nixon Daniel**
  jnd@beggslane.com
- **Daniel S. Drosman**
  DanD@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com
- **Krista M. Enns**
  kenns@winston.com hhammon@winston.com
- **Kathryn Fritz**
  kfritz@fenwick.com
- **Donald P. Gagliardi**
  dgagliardi@be-law.com vross@be-law.com
- **Bruce C. Gibney**
  bgibney@hewm.com
- **Daniel C. Girard**
  girardgibbs@girardgibbs.com cma@girardgibbs.com

- **Lionel Z. Glancy**
  info@glancylaw.com
- **Jonah Goldstein**
  jonahg@lerachlaw.com
- **Mark Gordon**
- **John Halebian**
  jhalebian@lshllp.com lshscanner@lshllp.com
- **Thomas J. Harrison**
- **Alice L. Jensen**
  ajensen@fenwick.com vadelman@fenwick.com
- **Robert A. Jigarjian**
  CAND.USCOURTS@CLASSCOUNSEL.COM
- **Willem F. Jonckheer**
  wjonckheer@schubert-reed.com
- **Dean S. Kristy**
  dkristy@fenwick.com
- **Felix Lee**
  flee@fenwick.com
- **William S. Lerach**
  e_file_sd@lerachlaw.com
- **Robert L. Michels**
  rmichels@winston.com
- **Matthew Paul Montgomery**
  mattm@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com
- **Kevin P. Muck**
  kmuck@fenwick.com cprocida@fenwick.com
- **Lucas Olts**
  LukeO@Lerachlaw.com
- **Troy Alan Rafferty**
  trafferty@levinlaw.com balverson@levinlaw.com
- **Brian J. Robbins**
  robbins@ruflaw.com
  zimmer@ruflaw.com;maytorena@ruflaw.com;sputtick@ruflaw.com
- **Darren J. Robbins**
- **Daniel T. Rockey**
  drockey@hewm.com nsims@hewm.com;rsazegari@hewm.com
- **Michael L. Rugen**
  mrugen@hewm.com
- **Robert Yale Sperling**
  rsperling@winston.com
- **James G. Stranch, III**
  jgs@branstetterlaw.com rjordan@branstetterlaw.com
- **Jessica Tally**
  JessicaT@lerachlaw.com
- **Carol Lynn Thompson**
  CTHOMPSON@HEWM.COM

- **Lesley E. Weaver**
  lesleyw@lerachlaw.com e_file_sf@lerachlaw.com
- **Dan Keith Webb**
  dwebb@winston.com
- **Ethan Richard York**
  eyork@winston.com ECF_CH@winston.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
J. Erik Connolly
Winston & Strawn LLP
West  Wacker Drive
Chicago, IL 60601-9703

Christopher Alan Garcia
Attorney at Law
Dell,Inc
1 Dell Way-Legal
Round Rock, TX 78682

Frederick W. Gerkens, III
Wechsler Harwood Halebian & Feffer, LLP
488 Madison Avenue, 8th Floor
New York,, NY 10022

Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Peter Lawrence Kaufman
Levin Papantonio Thomas Mitchell Echsner
316 South Baylen Street, Suite 600
Pensacola, FL 32502

Frederick T. Kuykendall
Levin Papantonio Thomas Mitchell Echsner
316 South Baylen Street, Suite 600
Pensacola, Fl 32501

Christopher R. Leclerc
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, Ca 94025-3506
```

**Fredric G. Levin**
Levin PapantonioThomas Mitchell Echsner
316 South Baylen Street, Suite 600
Pensacola, fL 32501

**Timothy M. O'Brien**
Levin Papantonio Thomas Mitcgell Echsner
316 South Baylen Street, Suite 600
Pensacola, Fl 32501

**J. Papantonio Papantonio**
Levin, Papantonio, Thomas, Mitchell, Ech
316 South Baylen Street, Suite 600
Pensacola,, Fl 32501

**Joe Scarborough**
Levin, Papantonio, Thomas, Mitchell, Ech
316 South Baylen Street, Suite 600
Pensacola,, Fl 32501

**Robert E. Smith, JR**
Levin Papantonio thomas Mitchell Echsner
316 South Baylen St., Ste 400
Pensacola, FL 32502

**Melvyn I. Weiss**
Attorney at Law
One Pennsylvania Plaza
New York, NY 10119-1063

Manual Service List (cont.)
*In re Cisco Systems, Inc. Sec. Litig.*
Master File No. C-01-20418-JW(PVT)

Stephen B. Morris, APC
MORRIS and ASSOCIATES
401 West "A" Street, Suite 2200
San Diego, CA 92101
Telephone: 619/239-1300

Wayne Schneider, General Counsel
NEW YORK STATE TEACHERS' RETIREMENT SYSTEM
10 Corporate Woods Drive
Albany, NY 12211-2395
Telephone: 800/356-3128

Richard P. Bosson
2703 Montague Court East
Clearwater, FL 33761

Charles W. Morgan
2220 Calle Opalo
San Clemente, CA 92673
Telephone: 949/498-8296

John P. Dillman
Tara L. Grundemeier
1301 Travis, Suite 300
Houston, TX 77002
Telephone: 713/844-3436

John R. Ihms
19149 Sierra Estates Drive
Newhall, CA 91321-2272

Lee M. Cassidy
1503 North Colonial Court
Arlington, VA 22209

Steven L. Moldane
3309 142nd Place NE
Bellevue, WA 98007-3249
Telephone: 425/376-2830